RICHARD C. HUMPHREYS & another *vs.* OLD COLONY RAILROAD COMPANY.

CATHERINE DITSON *vs.* SAME.

Suffolk.    November 14, 1893. — January 4, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Easement — Obstruction of Way — Railroad Location — Extinguishment of Way — Finding.*

The location filed by a railroad corporation crossed several streets in a city, among them F. Street, which was a private way, and D. Avenue, which was an old and well known public way, defining the exterior lines as crossing F. Street in the same way that they were defined as crossing the other streets; referring repeatedly to that street as F. Street, and at the end referring for a more particular description to a plan upon which F. Street was shown as an existing street, crossing the railroad in the same manner that D. Avenue crossed it. About a month before the location was filed, the corporation took from A. a deed of a piece of land, which was substantially covered by the subsequent location, lying westerly of F. Street and abutting on that street, which was referred to several times in the deed as F. Street; and less than a year after the location was filed the corporation took from B. a deed of a piece of land lying opposite the other lot and easterly of and abutting on F. Street, which was referred to in the deed twice as F. Street. After the railroad was constructed, the division roadmaster of the corporation placed planks between the rails on F. Street, and the planking has since been maintained by the corporation; and the existence of a travelled place at this crossing, and the fact that it was planked, have been known to the corporation since its road was built. *Held*, in actions by the successors in title of A. and B. to land abutting on F. Street against the corporation, for obstructing the way by posts and gates, that a finding that the plaintiffs' right to use F. Street as a way had not been extinguished was warranted by the facts.

TWO ACTIONS OF TORT, for the obstruction of an alleged private way in Boston, known as Freeman Street. The cases were tried together in the Superior Court, without a jury, be-

fore *Blodgett*, J., who reported them for the determination of this court, in substance as follows.

In 1812 one Jacob Foster acquired title to a tract of land in Dorchester, including the land through which Freeman Street was subsequently laid out, and over which the defendant corporation filed its location as hereinafter set forth.

In 1857 this land passed by the will of Jacob Foster to his two sons, Ira and Jacob, as tenants in common.

On June 26, 1860, Ira Foster conveyed one undivided half of the westerly part of the land owned by himself and Jacob in common to Jacob.

On March 15, 1871, Ira Foster and Jacob Foster conveyed a portion of the easterly part of the land which they had inherited from their father and owned as tenants in common to Oliver Ditson and John H. Robinson, by a deed which described the westerly boundary of the land as " a new street, thirty feet wide, called Freeman Street."

On September 2, 1871, Jacob Foster conveyed to the Old Colony and Newport Railway Company a portion of the land previously conveyed to him by his brother on June 26, 1860, by a deed which described the land as " commencing on Freeman Street," and, among other boundaries, running easterly " to a point on Freeman Street, . . . thence northerly by Freeman Street," which land was substantially covered by the subsequent location.

On October 4, 1871, the Old Colony and Newport Railway Company, of which the defendant was the successor, filed a location, which gave, among other such distances similarly expressed, the distance of the point of intersection of the base line " with the easterly line of Freeman Street" from the northerly line of Foster Street; and, in describing the westerly line of the location, mentioned the " westerly line of Dorchester Avenue," the " easterly line of Freeman Street," and the " westerly side of Freeman Street"; and, in describing the easterly line of the location, referred to the " easterly line of Freeman Street," and to the " westerly line of said Freeman Street," defining the exterior lines of the location as crossing Freeman Street in the same way that they were defined as crossing several other streets not far distant; and at the end of the delineation stated that " reference is hereby

made for a more particular description to a plan herewith filed," which showed Freeman Street as an existing street, crossing the railroad in the same manner as Dorchester Avenue crossed it.

On August 31, 1872, John H. Robinson and Oliver Ditson conveyed to the defendant a portion of the land previously conveyed to them by Ira Foster and Jacob Foster on March 15, 1871, by a deed which described the land as two parcels, each bounded " westerly by Freeman Street."

In 1878, in accordance with St. 1878, c. 135, the defendant filed a new location containing a description of the base line, westerly line, and easterly line of the location, substantially identical with that contained in the previous location.

After the filing of the location in 1871, the railroad company constructed its road, and when the road was constructed the division roadmaster placed planks between the rails where Freeman Street, as indicated on the plan filed with the location, existed, and the planking has been since maintained by the corporation.

In 1888 the defendant obstructed the alleged way by posts and gates.   The defendant did not station an agent to open and close the gates.

Dorchester Avenue, as shown on the plan, was a public way long prior to 1860.

In 1878 John H. Robinson was adjudicated a bankrupt, and Charles B. Fox was duly appointed his assignee, and the real and personal estate of Robinson was conveyed to Fox.

On June 26, 1878, Fox, as assignee, conveyed the interest of John H. Robinson in the premises on the corner of Foster Street and Freeman Street, between Foster Street and the railroad location, being part of the premises conveyed by Ira Foster and Jacob Foster to John H. Robinson and Oliver Ditson by the deed dated March 15, 1871, to William R. Clark, Jr., in pursuance of an auction sale.

On July 10, 1878, Clark conveyed one undivided half of the premises to Oliver Ditson, and on the same date John H. Robinson and Elizabeth Robinson, his wife, in her own right, released one half of the premises to Ditson for the purpose of releasing her dower.

By the will of Oliver Ditson the above described parcel was

left to the plaintiff in the second case for life, and she is in possession of the same.

The plaintiffs in the first case, as devisees under the will of Jacob Foster proved on June 14, 1886, own a portion of the land acquired by him from his father and from his brother on Freeman Street.

Freeman Street existed as a street before the railroad was built. Foster, Humphreys, and their tenants have used the crossing of the railroad at Freeman Street with horses and vehicles continuously since the railroad was built. The Ditson land has been vacant, and the owners were not shown to have made any actual use of the crossing.

The existence of a travelled place at this crossing, and the fact that it was planked, have been known to the railroad company since its road was built.

The passageway across the railroad has been made less convenient by the erection of gates and posts. When the gates are shut, as they are sometimes by the railroad company, the danger of injury from passing trains to persons using the way in vehicles is greater than if there were no gates, and the gates were not reasonably required for the safe operation of the railroad.

Upon the foregoing facts the judge found for the plaintiff in each case, and assessed damages in the sum of one dollar. If the finding was warranted by the facts, judgment was to be entered for the plaintiff thereon ; otherwise, the finding was to be set aside, and judgment entered for the defendant.

*J. H. Benton, Jr.*, for the defendant.

*W. L. Putnam*, for the plaintiffs.

ALLEN, J.  It was found at the trial that the plaintiffs' right to use Freeman Street as a way had not been extinguished, and this finding is to stand provided the facts would warrant it.

The plaintiffs conceded that Freeman Street was only a private way. If it is assumed in favor of the defendant that it had power to close this way by laying out its railroad across it, still, upon the evidence, the finding of the court was warranted. The location across the street by its terms included so much of the street as was contained between the exterior lines of the location. This is the chief fact relied on by the defendant to show an extinguishment of the way. The location, however, crossed

several other streets not far distant, and among them Dorchester Avenue, which was an old and well known public way; and the mention of all of them was similar. It could not be supposed that Dorchester Avenue was to be closed to public travel. There is nothing in the language of the location to show an intention to close up Freeman Street, except the mere description of the exterior lines, which are defined as crossing that street in the same way that they are defined as crossing other streets. The street is repeatedly referred to as Freeman Street, and at the conclusion of the delineation of the location, reference is made to a plan for a more particular description; and on the plan Freeman Street is shown as an existing street called by its name, and crossing the railroad in the same manner that Dorchester Avenue crosses it. Taking the location and the plan together, the most that can be said for the defendant is that it might be considered as doubtful whether it was intended to close Freeman Street.

Under this state of things other documents nearly contemporaneous may be looked at, and it appears that about a month before the location was filed the railroad company took from the predecessor in title of one of the plaintiffs a deed of a strip of land which was covered, or substantially covered, by the subsequent location, lying westerly of Freeman Street and abutting on that street, which is therein repeatedly referred to as Freeman Street. This deed would have the effect to convey the grantor's title to the middle of the street, reserving to the grantor a right of way over the street. *Goss* v. *Calhane*, 113 Mass. 423. Less than a year after the location was filed, the railroad company took from the predecessors in title of the other plaintiff a deed of a strip of land lying opposite to the other lot, and easterly of Freeman Street and abutting on that street, which in this deed also is twice referred to as Freeman Street. This deed tends to show that the railroad company at that time understood and intended that the street should be kept open for travel. *White* v. *New York & New England Railroad*, 156 Mass. 181.

In addition to this, it appears that after the filing of the location and the construction of the railroad, the division roadmaster of the railroad company placed planks between the rails on Freeman Street, and the planking has since been maintained by the

railroad company; and the existence of a travelled place at this crossing, and the fact that it was planked, have been known to the company since its road was built. This in a case otherwise doubtful would be strong evidence to show that all parties, including the railroad company, understood that the crossing was not to be closed. See *Winchester* v. *Glazier*, 152 Mass. 316, 323, and cases there cited. *Fitchburg Railroad* v. *Frost*, 147 Mass. 118.

On the whole, it seems to us that the findings for the plaintiffs were right.                    *Judgments for the plaintiffs.*