EDWARD HAMLIN & another *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY & another.

Suffolk.     January 20, 1896. — June 18, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Railroad — Easement — Extinguishment — Filing of Location.*

If land of a railroad corporation is subject to an easement in favor of adjoining land, the parties can lawfully adjust the rights and obligations of the two estates by extinguishing all other rights and claims, and establishing one permanent crossing in place of them, and such crossing is not necessarily extinguished by the filing of a location which contains no mention of it.

If the location of a railroad corporation, as it existed at a certain date, was subject to a right of way at a crossing, such right cannot be extinguished by a new location, as it existed at that date, filed only in pursuance of a permission given by the statute which confirmed the location.

BILL IN EQUITY, filed January 25, 1895, against the New York, New Haven, and Hartford Railroad Company and the Old Colony Railroad Company, to compel the removal of certain obstructions in a way across the Old Colony Railroad in the Dorchester district of Boston, and to restrain further interference with the plaintiffs' use of the way. Hearing before *Holmes*, J., who ordered a decree for the plaintiffs; and the defendants appealed to the full court. The facts appear in the opinion.

*J. H. Benton, Jr. & C. F. Choate, Jr.*, for the defendants.

*R. M. Morse, (M. Morton* with him,) for the plaintiffs.

BARKER, J.     The defendants have appealed from a final decree restraining them from interfering with the use of a way across the Old Colony Railroad. The railroad was built with a single track by the Old Colony Railroad corporation in the year 1845. The charter, St. 1844, c. 150, was enacted on March 16, 1844. The original location in Norfolk County was filed April 16, 1846, and shows a location four rods wide at the point in question. By St. 1848, c. 84, the corporation was authorized to take additional land, not exceeding twenty feet in width on either side of the railroad, for the purpose of building a second track, and the second track was commenced in the same year. The corporation became the Old Colony and Fall River Railroad

Company by union with the Fall River Railroad Company under St. 1854, c. 133.   The location of the Old Colony and Fall River Railroad Company was confirmed by St. 1858, c. 171, § 5, enacted March 27, 1858, and the corporation was authorized by the same section to file, at any time within one year, new descriptions of the whole or any part of its location as the same existed on March 27, 1858, and such a document was filed in Norfolk on March 21, 1859.

When the charter of 1844 was granted, Luther Spear owned in one tract the land to which the way is appurtenant, the adjoining land now occupied by the railroad, and the land on the opposite side of the railroad.   On January 27, 1845, he sold to the railroad corporation the strip of his land on which the railroad was built, saying in his deed, "The said corporation is to make a suitable road crossing within two years from date of deed."   In October, 1854, there was a transaction between him and the Old Colony and Fall River Railroad Company, in which, by a deed reciting that at the time of the laying out and construction of the railroad he was the owner of a tract of land across which the railroad was constructed, dividing his land into two separate parts, and that he had used certain ways or rights of way, passages, and crossings, he released to the °company all of the ways, rights of way, passages, and crossings ; and by a deed to him, found by the presiding justice to be part of the same transaction, the company conveyed to him and his heirs and assigns a right of way over the company's land and railroad at the place where the way in question is.   The recitals of the deeds justify the conclusion that the occasion for this transaction was the recent construction by the railroad company of a bridge over its railroad at a point near Spear's northern boundary, and that the transaction was a substitution of a crossing situated at the southern boundary of his land for other ways, rights of way, passages, and crossings over the railroad between the parts of Spear's land, and which up to that time he had used under claim of right.   The deed of the company recites that it had laid and was to keep in repair a plank covering on the crossing.   The evidence tends to show that this substituted crossing remained in use until within less than twenty years before the filing of the bill, and that it had been obstructed and closed by the defendants within twenty years.

The defendants contend that the right of way left in Spear by his deed of January 27, 1845, was extinguished by the location filed in Norfolk on April 16, 1846 ; that the transaction of October, 1854, was in effect a sale for private uses of property taken by the railroad corporation for public purposes, and beyond the power of the corporation, and that it gave no right of way across the railroad. They further contend that the location filed in Norfolk on March 21, 1859, extinguished all rights of way at the crossing mentioned in the transaction of October, 1854, if any such rights existed on March 21, 1859.

It is not contended that the deed of January 27, 1845, left in Spear a permanent right of way. Assuming, as was held in *Googins* v. *Boston & Albany Railroad*, 155 Mass. 505, that in general, when land is taken for a railroad and no right of crossing is reserved in the location, the land taken is not subject to such a right, we are of opinion that the location of April 16, 1846, might be found in fact to have recognized Spear's right of way by indicating it by the dotted line crossing the red line which shows the centre of the single track at the place on the plan marked " Spear." See *Humphreys* v. *Old Colony Railroad*, 160 Mass. 323. The location describes the centre line for a single track, and states that " the width of land taken is most of the way four rods, two and one fourth rods on the easterly and one and three fourths rods on the westerly side of the centre line." There is nothing in the language to show an intention to abrogate the crossing which, by accepting the deed of January 27, 1845, the corporation had agreed to make between the separated portions of Spear's land, any more than to show an intention to extinguish as ways the other roads or the navigable streams across which the location went. In the absence of any such language, and in consideration of the situation of the parties, the location of 1846, with the plan which is part of it, should if possible be construed, not as extinguishing, but as recognizing and affirming the right which Spear then had to cross the railroad from one part of his land to the other, and which he continued to exercise, and which formed the subject of his transaction of October, 1854, with the railroad corporation.

It is unnecessary to decide what the effect of this location was, or to consider whether a railroad corporation has power

to sell to an owner of lands adjoining its railroad a right of way across the railroad. The transaction of October, 1854, may well have been found a substitution of a particular crossing for other crossings in use in the vicinity, and to have been a transaction not detrimental to, but in aid of, the use for which the railroad corporation had taken the land. Its land being subject to the claim of an easement actually exercised in favor of Spear's land, the parties could lawfully adjust and fix the rights and obligation of the dominant and servient lands, as they did in the transaction of October, 1854, by extinguishing all other rights and claims, and establishing one permanent crossing in lieu of them.

The considerations above applied show that the crossing granted and made permanent by the transaction of October, 1854, was not necessarily extinguished by the location of March 21, 1859. The language of that location contains no mention of the crossing, and no statement that the corporation takes or extinguishes the right to use it. The plan which is part of the location shows not only a red line, which we assume to be coincident with the red line of the location of 1846, but also the side lines of the railroad land, and bounds and distances. At the place upon the plan where the present crossing would be located are lines running to the outer lines of the railroad land, which may indicate the crossing in the way in which public roads are shown upon the plan, and may denote that it was the intention to recognize, and not to extinguish, the crossing.

Besides this, the only right which the corporation had on March 29, 1859, to file a new general location of its railroad was that given by St. 1858, c. 171, § 5, and was merely to file new descriptions of the whole or any part of its location as the same existed on March 27, 1858, when its location was confirmed by the statute cited. See Sts. 1844, c. 150, §§ 1, 7; 1848, c. 84; 1854, c. 133; 1858, c. 171, § 5; also Rev. Sts. c. 39, §§ 54, 55, 73–75; Sts. 1846, c. 97; 1853, c. 351; 1854, c. 417. The location of the Old Colony and Fall River Railroad Company as it existed on March 27, 1858, was a location subject to the right of way at the crossing now in question, and that right could not be extinguished by a location filed only in pursuance of the permission given by St. 1858, c. 171, § 5.

*Decree affirmed, with costs.*