(Decided 5th March, 1875.)

---

JOHN L. NICODEMUS *vs.* JACOB NICODEMUS.

*What is an improper enlargement of an Easement:— When an Injunction is not the proper remedy for a Trespass.*

V. N. devised to his son Jacob, a tract of land through which a tail-race ran from a mill on the tract of his son John. The will provided, "It is my will that my son John, shall have the right to said race, he and his heirs forever, although" he "shall not at any time make said race deeper, or in anywise larger, but shall have the liberty to clean said race when he may think proper, without doing any harm on the lands of my said son Jacob." The tail-race ran some 300 feet through the lands of Jacob, and about 70 feet from where it discharged itself through a flood-gate, a brook entered it. To prevent the sand coming down this brook from filling up the race, J. L. N., who claimed under John, entered on the land of Jacob, and began to

34       v. 41.

build a culvert over and along the race to carry off the water of the brook. On the application of Jacob, J. L. N., was enjoined from proceeding. It appeared in the testimony that Jacob 'had never used the water along the 70 feet where the culvert was to be built, and that in consequence of the steepness of the banks the race along the 70 feet was not accessible to cattle. Held :

1st. That J. L. N. had no right to enter on the lands of Jacob for the purposes proposed.

2nd. That the proper remedy of Jacob was an action at law, and not an injunction in equity.

APPEAL from the Circuit Court for Washington County, in Equity.

This is an appeal from an order of the Court below, continuing an injunction previously granted upon the application of the appellee. The facts of the case are sufficiently stated in the opinion of the Court.

The cause was argued before STEWART, BRENT, GRASON, MILLER and ROBINSON, J.

*H. H. Keedy* and *W. T. Hamilton,* for the appellant.

The appellee had no right to use the water as it flowed through the race. His cattle could not tread down its banks, nor his wagons be driven over it, and thus impede the flow of water from the wheel of the mill. The bed of the race was level and the flow gentle, and any possible use of it by the appellee would necessarily interfere with the use made of it by the appellant.

The appellee could not use the water whilst it passed through the race, for any ordinary purpose; when cleaned, it is so deep and its banks so high as to render its use impossible.

The appellee never did use or attempt to use the water in the race, where the proposed culvert was to be. He admits this.

The right of the owner of the mill to the race is paramount. It is true PARKE, B., says in *Arkwright vs. Gell*, 5 *M. & W.*, 231, that a riparian proprietor of the water in an artificial water-course has "the right to use it for any purpose *to which it was applicable*," yet we insist that if it was applicable for no conceivable purpose or its application would interfere with the use and enjoyment of the mill owner, he could not use it.

The law relating to natural water-courses, does not apply to artificial water-courses, such as this race. The right of riparian proprietors to the use of waters of natural water-courses exist *ex jure naturæ*. "The natural stream, existing by the bounty of Providence for the benefit of the land through which it flows, is an incident annexed by operation of the law to the land itself." Like air and light, no one has the right to obstruct or pollute it. But the right to use the water of an artificial stream, is by grant or by user, such a user and for such a time as will afford a presumption of a grant. *Wood vs. Waud*, 3 *Ex. Rep.*, 777; *Arkwright vs. Gell*, 5 *M. & W.*, 203; *Acton vs. Blundell*, 12 *M. & W.*, 324; *Lasala vs. Holbrook*, 4 *Paige*, 169; *First Parish of Medford vs. Pratt*, 4 *Pick.*, 222; *Sargent vs. Ballard*, 9 *Pick.*, 251; *Arnold vs. Stevens*, 24 *Pick.*, 106.

The right to have the race being granted, everything is granted essential to protect the enjoyment of that right. 2 *Washb. on Real Prop.*, secs. 31, 41, 43; *Washb. on Easements*, 226; *Prescott vs. Williams*, 5 *Metc.*, 429; *Prescott vs. White*, 21 *Pick.*, 341; *Peter vs. Daniel*, 5 *Com. Bench*, 568.

"It has been held that, where one turned a second stream into one naturally flowing through his land, and thereby threw more water than naturally flowed in such stream into the current in another's land, the latter had a right to stop such extra flow, before reaching his land." *Washb. on Easements*, 292 (*margin;*) *Merritt vs. Parker*, *Coxe*, 460; *Tillotson vs. Smith*, 32 *N. H.*, 90.

"Where the use of a thing is granted, everything is granted essential to such use. Such a right carries with it the implied authority to do all that is necessary to secure the enjoyment of such easement." *Angell on Water-Courses*, sec. 163; *Prescott vs. White*, 21 *Pick.*, 341; *McTavish vs. Carroll*, 7 *Md.*, 360.

The appellee presents no case for an injunction. "It must be a strong case of trespass, going to the destruction of the inheritance, or the mischief must be remediless to entitle the party to the interference by an injunction."

"An injunction is not granted to restrain a mere trespass, where the injury is not irreparable and destructive to the plaintiff's estate, but is susceptible of perfect pecuniary compensation, and for which the party may obtain adequate satisfaction in the ordinary course of law." *Jerome vs. Ross*, 7 *Johns. Ch. Rep.*, 315; *Amelung, et al. vs. Seekamp*, 9 *G. & J.*, 472; *Cherry vs. Stein*, 1 *Md.*, 27; *Fort vs. Groves*, 29 *Md.*, 192.

The conscience of the Court must be satisfied, that the alleged wrong complained of would work great and irremediable damage, and not a loss or injury that would be trivial and susceptible of adequate compensation in damages at law. *White vs. Flannigan*, 1 *Md.*, 525; *Amelung, et al. vs. Seekamp*, 9 *G. & J.*, 468; 2 *Story's Eq. Jurispr.*, sec. 925.

*Attorney General Syester*, for the appellee.

As to the rights of the appellee in the water passing through the tail-race: Water-courses are natural or artificial. Artificial water-courses are of two kinds. One where the waters are artificially collected and pass through artificial channels. The other is where natural waters are made to pass through artificial channels, and it is with these last that we are to deal in this case.

We are considering here the case of riparian rights to a water-course, having a natural source, and flowing along

an artificial channel, and the appellee will insist, that the fact that the water flows in an artificial water-course, does not affect his right to the use of the water, *whilst it continues to flow there*. That in such water-courses the riparian proprietor has the same rights, whilst the *water-course continues*, that he has in a natural water-course. *Arkwright vs. Gell*, 5 *M. & W.*, 203 ; *Wood vs. Waud*, 3 *Exch.*, 746 ; *Washb. on Easements*, 296, 297.

The sum of these authorities and references is simple, and of every day application. If my neighbor has a drain through my lot, for the water falling from the eaves of his house, I have a clear right as against him to appropriate that water to any convenient purpose I see fit, just as I would to the waters of a natural stream. No actual appropriation of the water is necessary to establish *the right*. Riparian owners have certain rights to the use of water, whether they exercise them or not ; they may begin to exercise them when they will. *Sampson vs. Hodinot*, 1 *C. B., N. S.*, 590 ; *Buddington vs. Bradley*, 10 *Conn.*, 213 ; *Angell on Wat. Courses, secs.* 90, 100.

It is against the destruction of this right that the Court interposed.

The water has been flowing here over *thirty years*. During all that time the appellee has been undisturbed in his right to use it at all times, and everywhere in its channel. The appellant proposes now to bury seventy yards of it forever, and deprive the appellee of all right to use the water the whole extent of the tunnel. This means that he may bury the entire race, so that, although it shall flow over the appellee's lands, and he may at all times enter to clear it of obstructions, yet the appellee is never to use, taste or see one drop of it.

Conceding that all this was competent to the appellant in the beginning, he has too long acquiesced in the appellee's right now to deny it to him. Such rights may be acquired in purely artificial streams. *Major vs. Chadwick*,

11 *Ad. & Ell.*, 571, (39 *E. C. L.*, 169 ;) *Nutall vs. Brace-well*, 2 *Exch. L. R.*, 1.

As to the alterations at the mouth of the natural stream : This is in point of fact a diversion, and without anything more, sufficient to invoke the protection of the Court. That stream is now flowing precisely as natural causes have placed it, and the appellee has the right to insist that it shall continue to flow precisely *where, and as it is now flowing*, without let or disturbance from the appellant.

As to what constitutes a diversion, see *Tillotson vs. Smith*, 32 *N. H.*, 94 ; *Angell on Water-courses*, sec. 99.

Nor is it any answer to all this to say, that changing the natural bed and banks of this stream from the point where it flows into the tail-race until it empties into the natural stream below, has not been shown to be injurious ; because this act of the appellant, without interruption. would furnish evidence in derogation of the appellee's right to have the stream flow along its *natural course*, and for the invasion of such a right, an action will lie. *Bomer vs. Hill*, 1 *Scott*, 526.

As to the remedy : The unlawful acts in contemplation, involve the *permanent destruction of a right ;* and where the thing about to be done, will produce permanent injury. or destroy a right, that is an appropriate case for a bill. *Webb vs. Portland Manf. Co.*, 3 *Sumner*, 189.

Nor does the fact, that the appellee has never actually appropriated the water along the intended tunnel, or the fact, that he had, at the time he sued out his injunction, sustained no actual damage ; or the further fact, that in the judgment of others, his damages would be small, furnish any answer to the relief sought. *Lyon vs. McLaughlin*, 32 *Vermt.*, 423.

The jurisdiction in this class of cases is ancient and well established. As incident to the ownership, the riparian proprietor has an interest of a usufructuary nature in all the water flowing on his land, which equity always has

protected. *Gardner vs. Newburg,* 2 *John. Ch.,* 162 ; *Lamborn vs. Covington Co.,* 2 *Md. Ch., Dec.,* 409 ; *Lewis vs. Stein,* 16 *Ala.,* 214.

The injury here is not only not susceptible of adequate pecuniary damages, but it is one, the continuance of which, would cause a constantly recurring grievance, and in such instances equity will enjoin. *Mohawk & H. R. R. vs. Artcher,* 6 *Paige,* 83 ; *Dana vs Valentine,* 5 *Metc.,* 8.

This is a trespass which equity will enjoin : The appellant proposes to erect permanent structures on the appellee's lands. They are to be continuous, and the injury will be continuous. Such an injury is in itself *irreparable. Hopkins vs. Chaddick,* 18 *L. T.,* 236. If he wait until the works are done, it is too late for equity to relieve him. *Kerr on Inj.,* 295, 296; *High on Inj.,* 264, *sec.* 477.

But before the works are completed, *in limine,* equity ought to, and will, interfere, because such trespasses are in the very nature of things remediless at law. There is no standard by which invasions like this can be reduced to damages. *White vs. Flannigan,* 1 *Md.,* 525 ; *Shipley vs. Ritter,* 7 *Md.,* 408; *Farrow vs. Vansittar,* 1 *Ra. Ca., (Eng.)* 441 ; *London N. W. R. W. Co. vs. Lancashire and Yorkshire Co.,* 4 *Eq. Ca. L. R.,* 174; *Kerr on Inj.,* 295 *and* 6; *High on Inj.,* 264.

ROBINSON, J. delivered the opinion of the Court.

In 1829, John Nicodemus, under whom the appellant claims, built a mill at or near *"the Little Antietam Creek,"* and dug a tail-race for the use of said mill, through the lands of Valentine Nicodemus, his father.

In 1835 Valentine the father died, and devised the lands through which the race was dug, to his son Jacob, the appellee, with the following reservation however to his son John:

" Whereas, I have deeded to my son John a tract of land equally in worth to the above said two tracts of land adjoin-

ing the same, and whereas my son John has a tail-race through part of the land which I have hereby given to my son Jacob, so it is my will that my son John shall have the right to said race, he and his heirs forever, although my son John shall not at any time make said race deeper or in anywise larger, but shall have the liberty to clean said race when he may think proper, without doing any harm on the lands of my said son Jacob."

There is a branch which runs through the lands thus devised to Jacob the appellee, and empties into the race about seventy feet above the flood-gate. Ordinarily this branch is but a feeble stream, but after heavy rains the volume of water is largely increased, and quantities of sand and gravel are washed into it, and thence into the race, thus filling up the same, and backing the water upon the wheel of the mill. To prevent this, the appellant proposed to build a stone culvert over the top of the race, commencing at the point where the stream empties into the race, and extending to the flood-gates below, in order that the water, sand and gravel from the branch might pass through this culvert and thence into the creek below. The culvert was to rest upon stone walls to be built on each side of the race, to construct which, it was necessary for the appellant to enter with his horses, carts, and workmen upon the land of the appellee. To restrain him from so doing, and also to restrain him from constructing the culvert as proposed, the appellee applied to the Court below for a writ of injunction.

The appellant contends, that the grant of the race itself under the will of his father, carries with it the exercise of every right, necessary to the use and enjoyment of the same. Conceding this to be true as a general rule, the difficulty here is, that it nowhere appears in this record, that the construction of the culvert is *necessary, in the sense in which that term is used and to be understood,* to the use and enjoyment of the race. On the contrary, the proof

shows, that for more than *forty years* the race has served all the purposes for which it was made by occasionally clearing it out in the *ordinary way.* It may be true, that the construction of the culvert might prevent the deposit of sand and gravel from the branch into the race, and thus save the appellant the labor and expense incident to cleaning out the same. But the mere fact that it might serve his *convenience,* confers no right upon the appellant to enter upon and use the lands of the appellee for the purpose of constructing the culvert as proposed, thereby subjecting the servient estate to an additional servitude, not warranted by the terms of the grant, nor necessary to the use of the race.

If then, the mere grant of the race itself, confers no such right, can it be inferred under the reservation in the will of Valentine Nicodemus the father? We think not. The reservation to John, under whom the appellant claims, was *to clean out the race* whenever it might become necessary, without doing any harm to the lands of Jacob, and by no rule of construction, can an easement thus granted by terms so express and explicit be construed as confering upon the appellant the right to enter upon the lands of the appellee with horses, carts, and workmen, for the purpose of building a *stone culvert* over the race. Such a construction would subject the lands of the appellee to a burden not warranted by the terms of the grant, and certainly not contemplated by the devisor himself.

Such being the case, the question is whether the appellee, was entitled to the equitable interposition of the Court? In determining this question, we do not propose to examine the many cases referred to in the argument. The law in regard to this subject, ought to be considered .as well settled in this State. In more cases than one, has this Court said, that an injunction will not lie to restrain a mere trespass, and that in order to entitle a party to the interposition of a Court of Equity, the injury complained

of must be *irreparable;* or where full and adequate relief cannot be had at law; or where the trespass goes to the *destruction* of the property in the *character* in which it had been used and enjoyed; or where it was necessary to prevent multiplicity of suits in cases where the right was controverted by numerous persons, each standing on his own pretensions. *White .vs. Flannigan,* 1 *Md.,* 525; *Shipley vs. Ritter,* 7 *Md.,* 408.

Now it cannot be pretended in this case, that the mere entry upon and the use of the land of the appellee, for the purpose of constructing a stone culvert over a race belonging to the appellant, is a trespass of such a character as to entitle the appellee to a writ of injunction. In no sense could the injury to be apprehended be considered as irreparable, or such as could not be compensated for by an action at law, or such as tended in any manner to interfere with or destroy the property of the appellee in the manner in which it had been used and enjoyed. It was urged in argument that the appellee was entitled to the use of the water flowing through the race, and that the construction of the culvert, would interfere with this right. The proof shows, that the race runs through his lands, about three hundred feet, and the culvert proposed would cover only about seventy feet, thus leaving two hundred and thirty feet entirely open. But conceding for the purposes of this case, that the appellee as owner of the land on both sides of the race, is entitled to the use of the water, provided such use be not inconsistent with the use and enjoyment of the same by the appellant, a sufficient answer to an application for a writ of injunction on this ground, will be found in the testimony of the appellee himself, in which he admits that he had never used the water in that part of the race where the culvert was to have been built. Moreover, the proof shows, that owing to the steep banks on each side of the race, the use of the water for stock was not practicable.

In any aspect therefore in which the injury complained of may be viewed, we are of opinion there is no ground to warrant a Court of Equity to interfere by a writ of injunction. On the contrary, we think the appellee can have full and adequate relief for all the wrongs he may suffer by an action at law.

For these reasons the order below, granting the injunction will be reversed, and the bill dismissed.

*Order reversed, and*
*bill dismissed.*

(Decided 5th March, 1875.)