HARRIOTT M. KENDALL *vs.* JOHN D. HARDY, trustee.

Suffolk.    November 28, 29, 1910. — February 27, 1911.

Present : KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Way,* Private.    *Easement.    Equity Jurisdiction,* Mandatory injunction, Damages. *Words,* "Drainage."

In a suit in equity by the owner of an equity of redemption of an apartment hotel adjoining on its rear an alleyway sixteen feet wide, against the owner of another apartment hotel also adjoining on its rear the same alleyway, to compel the removal by the defendant of certain bay windows projecting over the passageway, it appeared that the plaintiff had acquired by his deed an easement in the passageway sixteen feet wide back of the two buildings and that it was " always to be kept open to its full width for the benefit of the abutters thereon for the purposes of light, way, drainage and the like," that the defendant had constructed

four horizontal rows of bay windows, the lowest of which started at a height of from eighteen to twenty-one feet above the surface of the passageway, that when the windows were constructed the plaintiff was not the owner of his property and that he did not acquire his title to it until a considerable time after the construction of the windows, that the nearest bay window on the defendant's building was about one hundred and twenty feet from the plaintiff's building, that the defendant's bay windows did not affect the light of the plaintiff's building, and did not noticeably diminish the light which came to persons travelling on the passageway. All the abutters on the passageway other than the plaintiff had agreed to the maintenance of the defendant's bay windows. When the defendant's bay windows were constructed the plaintiff had a moral right to redeem the property, which afterwards became his, by reason of an oral agreement that could not be enforced, and a mortgagee in possession, who then was the owner of the property, assured the defendant that he should not object to the windows personally and told him that the plaintiff was not likely ever to acquire any legal right to the property. *Held,* that equity did not require the enforcement of the plaintiff's technical right by a mandatory injunction, and that he was entitled only to his legal right to nominal damages.

In a suit in equity by the owner of an apartment hotel adjoining on its rear an alleyway sixteen feet wide, against the owner of another apartment hotel also adjoining on its rear the same alleyway, the plaintiff sought to restrain the defendant from maintaining coal bins under the passageway. It appeared that the plaintiff had acquired by his deed an easement in the passageway and that it was " always to be kept open to its full width for the benefit of the abutters thereon for the purposes of light, way, drainage and the like." It appeared also that before the first of the deeds creating the easement in the passageway was made the city had laid out and constructed a public sewer through the whole length of the passageway and that all the buildings on the passageway drained into this sewer. *Held,* that, if the word " drainage " in the description of the easement in the deed included anything more than surface drainage, it referred merely to drainage into and through the public sewer, that the easement included no right to have the land beneath the surface of the passageway remain unused, and that the plaintiff could not prevent the defendant from constructing and maintaining on his own land under the passageway a coal bin which did no damage to the plaintiff.

BILL IN EQUITY, filed in the Supreme Judicial Court on May 13, 1909, praying that the defendant be ordered to remove from a building called the Hotel Puritan, owned by him as trustee, certain bay windows projecting over a passageway at the rear of that building and also to remove a certain cellar, storage room and subway underneath the same passageway.

A commissioner to take the evidence was appointed under Chancery Rule 35 and the case was heard by *Braley,* J., who made a memorandum of decision and order for a decree as follows:

" Upon the evidence I find that both parties derive title by mesne conveyances from Henry M. Whitney, Grenville T. W.

Braman, and Henry D. Hyde, trustees. After the common grantors acquired title on October 15, 1880, they caused a plan of the locus to be prepared by Fuller and Whitney, dated December 28, 1885, which was recorded in the Suffolk Registry of Deeds, although the date of record did not appear. This plan shows a passageway sixteen feet in width, beginning at a point one hundred and twenty-five feet easterly from the east line of Ipswich Street; thence at a right angle leading northerly from Newbury Street a certain distance shown by the plan, then turning at a right angle and running easterly to a 'dead end.' The tract was divided by the way, so that the portion north of the way fronted on Commonwealth Avenue, and the portion on the south of the way fronted on Newbury Street. In the deed from Whitney et als. to Susan W. Farwell, January 30, 1886, the southerly boundary is 'on a passageway 16 feet wide, which leads to Newbury Street, as shown on the plan hereinafter mentioned and which is always to be kept open its full width for the benefit of the abutters thereon for the purposes of light, way, drainage and the like . . . and being a part of the land shown on a plan made by Fuller and Whitney, Civil Engineers, dated December 28, 1885.

"In the subsequent deeds of Farwell to Potter, Potter to Brooks, Brooks to Horn, Horn to Wheatland, and Wheatland to the plaintiff, Kendall, the passageway 'as shown on a plan of Fuller and Whitney, dated December 28, 1885, and recorded . . . in Suffolk Registry of Deeds, B. 1707, P. 401' is described as the southerly boundary. I am not satisfied that at the date of the deed to Farwell the original grantors had parted with all title to the land now owned by the defendant, but if they had I find that the deeds to Elizabeth Lee, dated January 20, 1886, and to Joseph S. Bigelow, dated January 30, 1886, the defendant's predecessors in title, contained a similar reference to the plan, and a like description of the way, as in the deed to Farwell.

"Upon these findings I rule that this passageway, for its full width and length, and to be kept open to the sky, became by grant an easement appurtenant to the plaintiff's estate.

"The defendant has erected a building known as the Hotel Puritan, the rear of which abuts on the northerly line of the passageway. It is seven stories in height above the basement.

In its construction bay windows have been built out from the
six upper stories, which project beyond the north line of the way
about three feet.  The first tier of windows is from eighteen to
twenty-one feet above the level of the way.  The plaintiff's
building, an apartment hotel, which is known as the Colonial, is
situated to the east of the Hotel Puritan, and abuts in the rear
on the northerly line of the passageway by which, as previously
stated, it is bounded on the south.  Under the ruling already
made so much of the bay windows of the defendant's building as
project over the way constitute an obstruction of the way and an
unlawful interference with the plaintiff's rights therein.

" The defendant contended that if this conclusion was reached
a mandatory injunction ought not to be awarded, but that the
plaintiff should be remitted to the assessment of damages.  It
was sufficiently proved, and I find, that, in fact, the plaintiff's
estate has not been damaged by the putting out of the bay win-
dows.  Neither light nor the use of the way as a means of ingress
or egress has been cut off or appreciably diminished.  But if all
the remaining abutters whose estates have been improved should
put out similar projections, then I find that the plaintiff's estate
might be damaged as to access of light; and the way might be
so darkened as to impair its convenient use.

" The plaintiff is not obliged to sell her land for the defendant's
benefit at a valuation, even if the amount to be paid by way of
damages must, upon the evidence before me, be considered as
merely nominal.  Her remedy in equity is ample to establish
and preserve the right itself.  *Downey* v. *Hood*, 203 Mass. 4, 11,
and cases cited.  Nor are the equities between the parties such
as to take away her right to equitable relief.  The defendant,
before he began to build, knew of the easement.  He not only
employed competent counsel to examine the title to the land,
but advised with him as to the scope of the plaintiff's dominant
rights.  He went farther, and procured from all the other abutters
an agreement in writing, permitting the bay windows.  This
agreement the plaintiff declined to sign, and insisted upon the
passageway being kept free from the proposed encroachment.
Nor thereafter has she been guilty of such delay in bringing suit
as to bar the maintenance of the bill.

" It further appeared that the defendant, having been advised

that he lawfully could do so, excavated under the way, but not beyond the centre of the roadway, and put in coal or other storage bins for use in connection with the hotel. The construction of these bins or underground cellars does not appear in any manner to have interfered with the plaintiff's use of the way for either the purposes of travel, communication, or drainage. I am unable to find that this use of the soil under the way, the fee to which is in the defendant to the centre line, is inconsistent with the full use and enjoyment of the easement by the plaintiff, or exceeds his rights as an owner. But while the plaintiff cannot maintain the bill on this ground, I find and rule that she is entitled to a mandatory injunction, commanding the defendant, within a time to be specified in the decree, to remove so much of each bay window as projects beyond the north line of the passageway. *Attorney General* v. *Williams*, 140 Mass. 329, 334. *Downey* v. *Hood*, 203 Mass. 4, 11."

The justice made a final decree ordering the defendant to remove, before September 1, 1910, from the building known as the Hotel Puritan described in the bill so much of each bay window projecting from the rear of that building as projects over and beyond the northerly line of a passageway sixteen feet wide, lying in the rear of that building, and on which the building abuts on its southerly side; and that the defendant pay the costs of the plaintiff, to be taxed by the clerk. It was further decreed that the construction and maintenance of the coal bins, storage rooms or other subterranean cellars existing and referred to in the bill as under the passageway, and used in connection with the defendant's building, did not interfere with the rights of the plaintiff in the passageway, and that she was entitled to no relief in regard to them.

The defendant appealed. The plaintiff appealed from the last part of the decree relating to the construction and maintenance of coal bins, storage rooms or other subterranean cellars.

The case was argued at the bar in November, 1910, before *Knowlton*, C. J., *Morton*, *Hammond*, & *Sheldon*, JJ., and afterwards was submitted on briefs to all the justices except *Loring*, J.

*M. Storey*, (*H. S. Davis* with him,) for the defendant.

*A. Whiteside*, (*W. I. Nottage* with him,) for the plaintiff.

KNOWLTON, C. J.  The plaintiff is the owner of the equity of redemption in an apartment hotel on the southerly side of Commonwealth Avenue called The Colonial, and the defendant is the owner of the Hotel Puritan on the same avenue, a short distance west of the plaintiff's property.  Both of these houses extend back from Commonwealth Avenue southward to a passageway sixteen feet wide, between Commonwealth Avenue and Newbury Street, which starts from a dead end at its eastern extremity and runs westward, parallel with these two streets, and then turns at a right angle to the south and enters Newbury Street.  The land through which the passageway runs belonged to Henry M. Whitney and others, trustees.  Their deed to Farwell, under which the plaintiff obtained her title, bounded the premises southerly "on a passageway sixteen feet wide which leads to Newbury Street as shown on the plan hereinafter mentioned and which is always to be kept open its full width for the benefit of the abutters thereon, for the purposes of light, way, drainage and the like," etc.  The deeds from those grantors, under which the defendant claims title, bound the lots on the passageway, and refer to it in substantially the same way.  The deeds to all the other abutters on that part of the passageway which runs parallel with Commonwealth Avenue and Newbury Street refer to the passageway in similar, although not identical terms.

There is no doubt that the single justice rightly ruled that the plaintiff, by her deed, acquired an easement in that part of the passageway which is in the rear of the defendant's building, and the right to have it kept open.

The defendant, in the erection of the Hotel Puritan in 1908 and 1909, constructed four horizontal rows of bay windows, the lowest of which start at a height of from eighteen to twenty-one feet above the surface of the passageway, and all of which project about three feet beyond the line of the passageway.  The maintenance of the windows there is a technical invasion of the plaintiff's right, and this bill is brought to obtain a mandatory injunction which will compel the defendant to remove them.  The defendant has constructed bins or vaults under the passageway, extending seven feet and four and one half inches beyond the line of it, which he uses for the storage of coal and other

articles. Against the maintenance of these the plaintiff in like manner asks for an injunction.

The first and most important question is whether, under the circumstances, the plaintiff is entitled to the remedy that she seeks. She was not the owner of the property when these windows were constructed. George Wheatland was then the owner of it, subject to two mortgages to secure amounts which nearly equalled its value. He was also the owner of the larger one of these mortgages. She did not obtain her title until a considerable time after the windows had been constructed. While it is agreed that previously she had a moral right and interest in the property, we understand that she had no right that was enforceable or recognizable in law. The defendant procured from some of the abutters on the passageway an agreement in writing that he might erect and maintain the windows on the building, and all the abutters except the plaintiff have joined in the agreement, without the payment of any consideration. He went to Mr. Wheatland, who was the only person except the other mortgagee that had legal or enforceable rights in the property, and Mr. Wheatland's testimony in regard to the conversation is as follows: "I told him I was not interested in it and said I would not bring any suit. I did not want to do that sort of thing. I should not bring suit against a man when there was no reason. I did not think it proper for me." The defendant testified that he told Mr. Wheatland "what Mr. Kendall proposed to do, and . . . Mr. Wheatland said that he did not think Mr. Kendall had any standing in the matter at all, that he had — only he had a verbal agreement to redeem this, and there was due him then about $135,000, and he did not believe Kendall or anybody else would redeem the property at that figure, and asked me if I did. . . . He did not wish to take any action which would seem hostile to Kendall, but that as far as — Kendall could not do anything until he had title to the property, . . . and in the meantime I need not worry, . . . and that, so far as he was concerned, he would have no part whatever in any such action as Mr. Kendall was making." This conversation was after the work had been begun and before it was finished. Kendall was the plaintiff's husband and agent.

The nearest bay window on the defendant's building is about

one hundred and twenty feet from The Colonial, while on the building directly west of The Colonial, between that and the Hotel Puritan, there are bay windows projecting out over the passageway which have been there for ten or twelve years, and, so far as appears, without objection from anybody. The nearer of these bay windows is within about fifteen feet of The Colonial, and the farther within about thirty feet, and they are so located that from no part of the plaintiff's house can the bay windows of the defendant's house be seen, even by leaning out of a window.

The light, which is one of the purposes for which the passageway was to be kept open, was for the benefit of the houses along the way. It is manifest that the defendant's bay windows do not affect the light of the plaintiff's house. So far as the light was for the benefit of persons travelling on the passageway, the bay windows do not noticeably diminish it. The justice found that the plaintiff's estate has not been damaged by the putting out of the bay windows. All of the other abutters on the way have agreed to the maintenance of them. The plaintiff complains of nothing but a technical invasion of her legal rights, which causes her no damage. This too, when at the time of the construction of the windows she had no right to the property that could be enforced, and when the owner at that time, without attempting to deprive her of her moral right, indicated his personal willingness, as owner, that the windows should be maintained there. The question is whether, under these circumstances, equity requires that the defendant should remove the windows at a large expense and to the great damage of his property. When the legal owner of the property gave him an assurance that he should not object to the windows personally, and told him that the plaintiff was not likely ever to acquire any legal right to the property, is the fact that, before the windows were completed, he understood that the plaintiff had a moral right to redeem, with no right of which the law takes cognizance, and with no power to give him any rights, sufficient to charge him with the commission of a great wrong, such as to subject him to the penalty of cutting off his windows at great loss, when no one could be benefited by the removal of them?

Under the facts of this case we are of opinion that equity does

not require the enforcement of the plaintiff's technical right by an order for an injunction. Her legal right remains, and she is entitled to nominal damages. A majority of the court are inclined to apply the general principle under which the plaintiff has been left to his remedy in damages in many cases. See *Brande* v. *Grace*, 154 Mass. 210; *Lynch* v. *Union Institution for Savings*, 159 Mass. 306; *Harrington* v. *McCarthy*, 169 Mass. 492; *Levi* v. *Worcester Consolidated Street Railway*, 193 Mass. 116; *Washburn* v. *Miller*, 117 Mass. 376; *Isenberg* v. *East India House Estate Co.* 3 De G., J. & S. 263; *Durell* v. *Pritchard*, L. R. 1 Ch. 244; *Hall* v. *Rood*, 40 Mich. 46; *Nicodemus* v. *Nicodemus*, 41 Md. 529. The case of *Stewart* v. *Finkelstone*, 206 Mass. 28, 38, was very different from the present one in its facts.

The single justice held that the construction by the defendant of the underground bins or vaults, for use for the storage of coal and other articles, was not inconsistent with the full use and enjoyment of her easement by the plaintiff, and did not exceed the defendant's rights as owner.

The easement granted was the right to have the passageway kept open. This includes the entire space above the ground. The additional words, "for the purposes of light, way, drainage, and the like," are explanatory of the intended use of the passageway, but they create no additional right unless by implication. Drainage is the only one of these words that by any interpretation can relate to rights underground. Its meaning can be satisfied by referring it to drainage upon the surface. When we consider it in reference to the plaintiff's construction of drains beneath the surface, it is important to remember that, before the first of these deeds referring to the passageway was made, the city had laid out and constructed a public sewer through the whole length of the passageway. It is to be assumed that this had been done under proper proceedings which gave the city and the public permanent rights there. It is found that all the buildings on the passageway drain into this sewer. If underground drainage was included in the reference in the deeds, it is not to be supposed that the parties contemplated anything more than drainage into and through the public sewer. We are of opinion that these deeds did not give the individual abutters a right to have the land beneath the surface of the

passageway remain unused, so that the construction of a coal bin by an owner under it would subject him to a suit by an abutter whose property was not damaged by it. The rule as to ownership along highways where a public easement is taken, which gives rights for all kinds of passage and transportation beneath the surface as well as above it, permits the individual proprietor to use the property in any reasonable way, so long as he does not interfere with the exercise by the public of its paramount right. *Sears* v. *Crocker*, 184 Mass. 586. Whenever the public authorities find it necessary to use it, the individual owner must give way. Without determining whether the reference to drainage in these deeds gives the grantees any rights in the passageway beyond the use of it for surface drainage, and as abutters entitled to the benefit of the public sewer, we are of opinion that the findings and rulings of the judge on this point were correct.

It follows that the bill must be dismissed as to that part of it which relates to the subterranean construction, but will be retained for the establishment of the plaintiff's right as to the bay windows, and a decree awarding nominal damages and costs, unless the plaintiff elects to have it dismissed altogether.

*So ordered.*