CHEN FONG & others, trustees, & others *vs.* NEW ENGLAND
TELEPHONE AND TELEGRAPH COMPANY.

Suffolk. December 4, 1928. — January 4, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Way,* Private. *Easement. Deed,* Construction, Boundary. *Equity
Jurisdiction,* To enjoin infringement of easement. *Mortgage,* Of real
estate: discharge. *Contract,* Merger. *Equity Pleading and Practice,*
Master: findings, report; Exceptions; Appeal.

A master, to whom a suit in equity was referred, found that the grantor
in a deed of land adjacent to a private way intended to convey the
fee to the middle of the way. A party excepted to the master's refusal
to find, " on the enumerated facts with all the evidence," that the
grantor did not intend to convey such a fee. An interlocutory decree,
from which the excepting party did not appeal, was entered confirm-
ing the report and overruling the exceptions thereto. The decree
stated that the excepting party did not "waive . . . [his] exceptions
if properly taken." The evidence was not reported. *Held,* that,
upon appeal from a final decree, the question of the extent of the
conveyance was not open to the excepting party.

A master, to whom was referred a suit in equity by the owner of a lot of
land bordering on a private way against the owner of a lot on the
opposite side of the way to compel the defendant to remove alleged
obstructions of the surface and the subsoil of the way, found that
the plaintiff and the defendant each derived title from a common
grantor under deeds given in 1843 and conveying the fee to the lots
"with all rights, easements, privileges and appurtenances thereto
belonging as now used and enjoyed therewith"; that the grantor
intended by each deed to convey the fee to the center of the way,
subject to the common easement of passage; that a drainage pipe
was found in the way in 1860, which had been used ever since then;
that no mention of drainage was made in the deeds, but that the
common grantor established some form of drainage for the lots, and
that the owners thereof acquired prescriptive rights in such drainage
pipe, which "is now established as an easement in . . . [the way] for
the benefit in common of abutters"; that the foundations of the
defendant's building projected into the way varying distances up to
three feet; and that such projection was entirely beneath the surface
of the soil, did not interfere with the present system of drainage in the
way, and could never interfere with any practical system of drainage
likely to be adopted. A final decree was entered dismissing the bill.
*Held,* that
    (1) Even if the defendant had no title in fee to the center of the way,

the plaintiff likewise had no title to that portion of the way into which the foundations of the defendant's building projected, and could not complain of such projection, which did not constitute a nuisance affecting the plaintiff's land, even if it were made without right by the defendant;

(2) On the master's findings, the projection was within the defendant's own land;

(3) There was no interference by the defendant with the plaintiff's right of passage over the way, nor with any easement of drainage belonging to the plaintiff;

(4) The decree dismissing the bill was proper.

It appeared in the suit in equity above described that the common grantor, previous to the giving of the deeds under which the plaintiff and the defendant derived title, made an agreement with the holders of mortgages upon the land wherein the parties covenanted that the way should remain forever open and unencumbered for use in common by the abutters "for the purposes of passing over and of draining under the same." No lots were sold by the common grantor while such agreement was in force and the mortgages were discharged previous to the giving of said deeds by the common grantor. *Held*, that whatever easements originated from such agreement were destroyed by the discharge of the mortgages.

BILL IN EQUITY, filed in the Superior Court on August 8, 1922, and afterwards amended, seeking to have the defendant ordered to remove certain alleged obstructions from the surface and subsoil of Oxford Place in Boston.

The bill, and material facts found by a master to whom the suit was referred, are described in the opinion. The master also found:

"I find that a drain pipe about twelve inches in diameter is laid in said way about six feet below the surface of the way. That said drain pipe was found there in 1860 when the city first established its present system of drainage in Oxford Street and first connected the pipe in Oxford Place with the city's system in Oxford Street.

"I find that said pipe in Oxford Place has so been used and enjoyed ever since. . . .

"Apart from the agreement of April 28, 1843, no mention is made of drainage in Oxford Place. Nothing referring to drainage is shown on the plan recorded. Nothing concerning drainage is mentioned in the deeds of lots on Oxford Place, and no reference to the agreement is made in the deeds. . . . The pipe found in Oxford Place in 1860, when

the city first installed a sewer in Oxford Street, would have no outlet before that time and I find this pipe was laid to meet the city's improvement.

"I find that some form of drainage was absolutely necessary for the large number of houses erected by Johnson, not only for their enjoyment but to sell them, which was his prime object. He was concerned about a drainage right for these houses as indicated by his agreement. In view of the dearth of facts surrounding this point, it is a matter of conjecture just what form of drainage was employed, but I find that Johnson established, for the benefit of each lot, some method of drainage conforming to the prevailing private custom of that period. Drainage ordinarily consists of some artificial channel, commonly known forms of which are the pipe, the open ditch or underground cesspool. . . .

"I find that lot owners on Oxford Place acquired prescriptive rights in this drain in Oxford Place, whether it was a drain pipe laid by Johnson or not, or however it was laid there, and that this drain is now established as an easement in Oxford Place for the benefit in common of abutters."

By order of *Bishop*, J., there were entered an interlocutory decree confirming the master's report and overruling exceptions by the plaintiffs thereto, and a final decree dismissing the bill. The plaintiffs appealed from the final decree only.

*H. W. Sullivan & E. P. Barry*, for the plaintiffs, submitted a brief.

*M. F. Weston*, for the defendant.

CARROLL, J. In this suit in equity the plaintiffs alleged that the parties were the owners of certain lots on Oxford Place, in Boston; that this passageway was to be kept open for the common benefit of the landowners; that the defendant, in constructing its building, encroached upon the surface and subsoil of Oxford Place. The plaintiffs prayed that the defendant be ordered to remove all obstructions from the surface and subsoil. The case went to a master. His report was confirmed by an interlocutory decree which

overruled the plaintiffs' exceptions to the report. From this decree no appeal was taken. The decree states that the plaintiffs do not waive "their exceptions if properly taken to the master's refusal to find, 'as a fact, that on all the enumerated facts with all the evidence it was not the intention of Johnson [the common grantor] to convey a fee to the middle of Oxford Place.'" The evidence was not reported. By final decree the bill was dismissed; the plaintiffs appealed.

Briefly stated, the facts as found by the master were that Oxford Place is a private way laid out in 1842 by one Johnson, the common grantor, from whom, through mesne conveyances, the plaintiffs and the defendant derive title. The plaintiffs own the lots shown on the plan as I and J. The defendant's lots are S, T, U, V, W, and X, on the opposite side of the way from those of the plaintiffs. Johnson proceeded to develop the property. He laid out the fifteen foot court in the center of the tract with a passageway leading to Harrison Avenue, which passageway and court are now Oxford Place.

The first references to easements appearing in the chain of title are in the deeds from Hastings and Minot to Johnson in 1842, which refer to easements, privileges, and appurtenances thereto belonging. Prior to April 28, 1843, Johnson made various conveyances referring to the fifteen foot court. In these conveyances, the master found, Johnson "conveyed no express right of passing over nor of drainage under said Oxford Place; that such rights as were granted were subject to existing mortgages and the danger of foreclosure, and were in general undefined terms only." On April 28, 1843, Johnson made an agreement with the mortgagees, containing covenants and grants by all the parties to the effect that Oxford Place as laid out should throughout its extent forever remain open and unencumbered for the use in common of the owners and occupants of real estate abutting thereon, "for the purposes of passing over and of draining under the same." These easements were granted by Johnson "to be forever enjoyed by them as appurtenant to and according to their several and respective titles as

mortgagees or otherwise of and in the said parcels of real estate abutting thereon."

The mortgages on the premises when this agreement was made were discharged as early as July 1, 1843. On that date Johnson mortgaged lots I, J and K to Jonathan Minot by separate mortgages referring to Oxford Place. Each lot was said to be free of all encumbrances, was bounded "by Oxford Place" and was conveyed "with all rights, easements, privileges and appurtenances thereto belonging *as now had used and enjoyed therewith.*" It was from the foreclosure of the mortgages on lots I and J that, by mesne conveyances, the plaintiffs acquired lots I and J.

Johnson, by deeds given in 1843 and 1844, some of which covered the properties later acquired by the defendant, bounded each lot "by Oxford Place"; each deed in reference to rights, easements, privileges and appurtenances, contained the words "as now had used and enjoyed therewith." The deed of lot W, dated July 21, 1843, recites, in addition, "including a right and privilege in common with others thereto legally entitled in said Oxford Place of passing and repassing in, upon and over the same." The plan of the lots referred to was recorded July 25, 1843. The master found as a fact that, although the abutters' lots were bounded "by Oxford Place" and with metes and bounds of exact measurements, nevertheless, it was Johnson's intent to pass to his several grantees the fee to the center of the way, subject to the common easement of passage.

About 1920, the defendant began the construction of a building on Oxford Place, covering all of its lots. The foundation as completed consists of a concrete wall through which run seven iron columns each resting on a concrete footing. At and below the surface soil the wall goes down twenty-two feet and projects five inches into the subsoil of the way. The cast iron supports at the base of the columns extend into the subsoil for several inches. The concrete footings, with their base twenty-five feet below the surface of the way, project about three feet. It was found as a fact that the foundation of the defendant's building does not interfere with the present system of drainage in Oxford

Place, and, in effect, it can never interfere with any practical system of drainage likely to be adopted; that no part of the building at or above the ground projects into Oxford Place.

One of the plaintiffs' contentions is that, as the defendant's land was bounded "by Oxford Place," it did not own to the middle of the way. In answer to this the defendant contends that this question is not open; that, as the plaintiffs did not appeal from the interlocutory decree, only such matters are open on the appeal from the final decree as may erroneously affect the final decree. *Reno* v. *Cotter*, 236 Mass. 556, 560. *Galkowski* v. *McManus*, 257 Mass. 509, 510, 511. *Ledoux* v. *Lariviere*, 261 Mass. 242, 244. On the facts found by the master, the question is, Did the defendant interfere with the property of the plaintiffs in such a manner as to entitle them to a mandatory injunction? The exception of the plaintiffs was to the refusal to find that "on the enumerated facts with all the evidence, it was not the intention of Johnson to convey a fee to the middle of Oxford Place." In the amended report the master states that the plaintiffs' exception was to his refusal to make this finding "on the facts found." We, therefore, are of opinion that this question is not open.

Even if this question were open, the plaintiffs to maintain their suit in equity must rely on the strength of their own title; they cannot rely on any weakness of the defendant's title. They must show that their property rights have been interfered with. In the absence of right or title in the premises where the defendant's acts were done, the plaintiffs cannot have an injunction against acts which do not amount to a nuisance that affects the plaintiffs' land, even though the acts of the defendant are contrary to law. *Brown* v. *Pinkham*, 18 Pick. 172, 174. *Jenks* v. *Williams*, 115 Mass. 217. *Frazee* v. *Nelson*, 179 Mass. 456, 459. See *Barnstable* v. *Thacher*, 3 Met. 239; *Litchfield* v. *Ferguson*, 141 Mass. 97. The plaintiffs did not own the fee in the entire width of Oxford Place. The parties derive their title under conveyances which do not refer in terms to the fee in Oxford Place. Both the plaintiffs' and the defendant's lots, by the deeds to their predecessors in title, are bounded "by said Oxford Place."

If the plaintiffs' contention that the defendant does not own to the center of the way is true, it is equally true that the plaintiffs do not own to the center. Even if it be assumed that the plaintiffs' contention in this respect is sound, there was no interference with their side of Oxford Place, and they cannot complain of an invasion of the land in which, as distinct from easements, they have no title.

The master found that Johnson intended to pass, and did pass, the fee of Oxford Place to the various abutters thereon, except as to the lot X. If this finding is correct, the foundation of the defendant's building which protrudes into the soil in front of lots S, T, U, V and W is in the defendant's soil and does not infringe on the plaintiffs' land. This finding of the master, that Johnson intended to convey, and did convey, the fee of Oxford Place, is based on the situation which existed relative to drainage, the language used in other contemporaneous deeds, the then state of the decisions, and the inutility of the fee in Johnson after the sale of the lots. The question was considered in *Erickson* v. *Ames*, 264 Mass. 436, with a full citation of authorities. We do not think a determination of this particular point is essential, as the plaintiffs do not show their rights were invaded, even if the fee to the center of the way remained in Johnson and did not pass by his deeds.

The plaintiffs' right of passage over Oxford Place was not encroached upon by the defendant. At and above the surface soil the way was not interfered with, and its utility was not impaired. No use was made of the way inconsistent with the easement of passage. *Healey* v. *Smith Carriage Co., ante,* 203, 208, 209, and cases cited.

There was no interference with the easement of drainage belonging to the plaintiffs. The master found that their title came from the foreclosure of mortgages which conveyed "all . . . easements . . . thereto belonging *as now had used and enjoyed therewith.*" The easements granted by such language were limited to the specific use of the land as it was then used and enjoyed. *Kendall* v. *Hardy,* 208 Mass. 20. *New York Central Railroad* v. *Ayer,* 239 Mass. 70, 78, 79. There is nothing to show that the defendant's building in-

terfered with the drain in which the plaintiffs had an easement, and it was found that the defendant's structure cannot "actually (as distinguished from legally) interfere with any conceivable use or exercise by the complainants of any right of drainage which the complainants may have in, under, upon or with respect to Oxford Place."

There was no "general easement." Whatever easements were granted by the agreement of April 28, 1843, were lost by merger when the mortgages to the Massachusetts Hospital Life Insurance Company, to Hastings, Minot and French, were discharged, no lots having been sold subsequent to the agreement and while the mortgages were in force. *Rogers* v. *Powers,* 204 Mass. 257. The deeds made by Johnson after the discharge of the mortgages referred to the new plan with terms relative to easements different from those used in the agreement with the mortgagees.

As the defendant has not interfered with any of the plaintiffs' rights the decree dismissing the bill is affirmed with costs.

*Ordered accordingly.*