INHABITANTS OF BROOKLINE *vs.* RENTON WHIDDEN.

SAME *vs.* ATHERTON LORING.

Norfolk.    November 22, 23, 1917. — February 28, 1918.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Way,* Private.    *Municipal Corporations.    Equity Jurisdiction,* Mandatory injunction.

Where a private way fifty feet wide, leading from a public street to a pond, belongs, as an easement granted by deed, to the owner of certain land, if the superintendent of streets of the town in which it lies, acting under Gen. Sts. c. 43, § 83, (now R. L. c. 48, § 99,) for the public safety and to protect the town from liability for injuries, because a traveller has been drowned in the pond, places a barrier across the entrance to the way, thus preventing its use with vehicles, although leaving it accessible to pedestrians, and the barrier is maintained for many years, this does not affect the existence of the easement, and, if twenty-seven years after the erection of the barrier the town acquires by purchase and conveyance the land to which the right of way is appurtenant, the town acquires the right to use the private way over its full width for vehicles as well as for travellers on foot.

Where a town as the owner of certain land owns as appurtenant to it an easement of the right to use a private way fifty feet wide, and brings a suit in equity for a mandatory injunction to compel the removal of a substantial brick wall built nineteen feet into such private way, it is no defence, that the superintendent of streets of the plaintiff and a member of the board of selectmen having in charge the highway district that includes the right of way, at the request of the defendant and at the cost of the town, placed curbing on an intersecting street extending across into the private way owned by the town to the same extent as the defendant's wall and that the superintendent of streets, when asked by a contractor employed by the defendant whether he could lay a granolithic sidewalk over this nineteen foot projection into the private way, answered, "Yes," because these acts did not constitute a license by the town to interfere with the easement owned by it, which could not be relinquished nor extinguished by an act of any town officer not authorized by the town.

In a like suit brought by the same town against another defendant for obstructing the same private way by erecting a building extending into it, it was *held* that for the same reason it was no defence, that the defendant had obtained the usual permits for constructing his building and had told the clerks or officials of the town that he proposed to put it "in any position he wanted to on the street" and had some general talk with the town engineer and one of the selectmen.

In the same cases it was *held* that the defendants, having been aware of the existence of the indenture that created the right of way owned by the town and having been advised in a general way as to the state of their record title with

reference to the easements in the private way when they built their obstructions, must be taken to have made these expenditures without excuse and under no misapprehension; and that, there being no suggestion that prompt action had not been taken when the matter came to the attention of the proper officers of the town, mandatory injunctions should issue ordering the defendants to remove the obstructions.

Two BILLS IN EQUITY, filed in the Superior Court on January 29, 1914, by the town of Brookline against the owners of lots abutting on a private way or street called Essex Street constituting an extension of the public highway of that name in the part of Brookline called Longwood, the first suit, against the defendant Whidden, being brought to compel the removal of a brick wall extending into such private way, and the second suit, against the defendant Loring, being brought to compel the removal of a portion of a building of that defendant extending into such private way.

The two cases were referred separately to the same master, who heard the cases together and made a single report covering them both. Later the cases were heard upon the master's report by *Callahan,* J. The judge made a separate memorandum of findings in each case.

In the suit against Whidden his memorandum, after the introductory statement, was as follows:

"I rule that the plaintiff acquired by grant a right of way in that portion of Essex Street occupied by the defendant's wall, and that the easement was never completely extinguished by abandonment, or otherwise.

"But, while I rule there was no sufficient evidence to warrant a finding that the plaintiff granted a license to the defendant to erect the wall, I also rule that the plaintiff, knowing that the defendant had in fact erected the wall, granted him an implied license to maintain the obstruction caused by it, by reason of its extension of the Ivy Street curbing into Essex Street in acquiescent harmony with the impeding structure. . . . I further find and rule that by continuing to maintain the obstruction and by developing the land on Essex Street back of it by grading and by planting it with shrubs and vines, the defendant completely executed the license granted to him by the plaintiff.

"I, therefore, rule that the easement has been so modified by

the conduct of the parties as to extinguish it so far as it is obstructed by the wall complained of.

"In my opinion the bill should be dismissed, with costs."

In the suit against Loring the memorandum, after the introductory statement, was as follows:

"I rule, that the plaintiff acquired by grant a right of way in that portion of Essex Street occupied by the defendant's building; that the easement was never extinguished by abandonment, or otherwise, and that, as to this defendant, it was never modified or diminished by waiver, executed oral license, or otherwise.

"I find as facts by inference that the building constitutes a substantial obstruction of the plaintiff's right of way and that the building was constructed by the defendant, not inadvertently, but with notice that the successors in title of Sears and Francis, or some of them, were likely to assert their interest in the dominant estate and to contest an invasion of their right.

"The plaintiff is entitled to a decree ordering the defendant to remove such portion of his building as extends beyond the westerly line of Essex Street and enjoining him from further obstructing, or causing to be obstructed, any portion of such street abutting his land."

Later by order of the judge final decrees were entered dismissing the bill against the defendant Whidden with costs to that defendant and, in the suit against Loring, ordering that defendant to remove such portion of his building described in the bill as extended beyond the westerly line of Essex Street and enjoining him from further obstructing or causing to be obstructed any portion of that street abutting upon his land, and ordering him to pay costs to the plaintiff.

In the suit against Whidden the town of Brookline appealed and in the suit against Loring that defendant appealed.

*W. D. Turner*, for the town of Brookline.

*A. Lincoln*, for the defendant Loring.

*T. Hunt*, for the defendant Whidden.

RUGG, C. J.    These are suits in equity whereby the plaintiff seeks to have removed obstructions placed by each of the defendants in a private way known as Essex Street in the town of Brookline.   The plaintiff, as grantee in deeds of two parcels of land, one called the Amory Playground and the other Mason

Square, asserts proprietary ownership of rights of way in Essex Street. The cases were referred to a master, whose findings of . fact must be accepted as true since there is no report of the evidence.

Summarily stated, the material circumstances are that in 1827, by indenture duly executed and recorded, Ebenezer Francis and David Sears, being owners of large tracts of adjoining land, laid out along their boundary line a new road fifty feet wide, each contributing one half the required land. The description of the way, thrice repeated in the indenture, was that it extended from Brighton Road "southerly about one hundred and fifty rods until it comes to the pond." The recital in the indenture is that the way is for the mutual benefit and common use of Sears and of Francis as owners of tracts of land (including the several parcels owned by the parties hereto), and their respective heirs and assigns, and of all persons going to or from their respective tracts of land or any part thereof. This new way, known as Essex Street, was shown as extending to and beyond the pond in a series of published or recorded plans by different civil engineers between 1849 and 1885. That part of Essex Street between Brighton Road and Ivy Street became a public highway and respecting that no question now is raised. The controversy centres about that portion extending southerly from Ivy Street and beyond the pond. The estates of the defendants are on the southerly side of Ivy Street on opposite corners of Essex Street. This portion of Essex Street extending southerly from Ivy Street was a well defined, ordinary country road, and long before the ownership of the parties to the present suit, had been put in a condition safe for travel for persons and vehicles. It was open and dedicated to public use. At or near the pond it joined Freeman Street. On one side Essex Street was marked by a high hedge, along which next to the street was a well defined raised walkway suitable for use by pedestrians; on a part of the other side was a fence of stone posts and iron chains. The shore line of the pond was not immovable, but varied somewhat in location by reason of swamp, drainage, wet and dry seasons, filling, and perhaps other causes. The street was used by people both on foot and in vehicles until 1876, when the superintendent of streets of the town, because a traveller had been drowned in the pond, placed a barrier at or near Ivy Street,

effectually preventing vehicles from entering Essex Street, but not seriously obstructing travel on foot. Thereafter vehicles did not use that portion of Essex Street, but it continued to be used at all times by pedestrians resorting to the pond or its shores or near by land for sports or picnicking. Freeman Street to its junction with Essex Street at the pond also was open and used as a private way for a considerable traffic by vehicles from about 1858 to 1876. In 1890 the officers of the town granted a license for the erection of electric light poles in the street, which were placed in accordance therewith.

The town has no right in its governmental capacity to the locus of the street, but it has rights as a municipal corporation owning land abutting on the street. Those rights arise from its purchase in 1903 of a tract of land for use as a public playground bounded on Freeman Street and on its junction with Essex Street and on Essex Street as and if extended southerly from such junction. The premises were conveyed with the right "so far as the grantors have the power to grant the same, to use said Freeman Street and Essex Street for all purposes for which public ways are commonly used in said Town" and subject to the agreement of 1827 between Francis and Sears. This land was owned at the time of the indenture in 1827 by Sears. A part of it was conveyed by Sears to his daughter in 1845 and it bounded on a line corresponding to the centre line of Essex Street as laid out in the indenture of 1827 as if extended across the pond southerly to Beacon Street. The remainder was devised to his daughter by will, proved in 1871, by a description bounding on Freeman Street and Essex Street and their intersection. Both these tracts were conveyed by the heirs of the daughter in 1903 to the grantors in the deed to the town "with the benefit of and subject to such rights and easements as may now be in force respecting the laying out and use of a street fifty feet wide called Essex Street along the easterly side of the granted premises." By will Sears gave the "fee of the streets and squares I have laid out and opened on my estate" to his children and their issue "in trust that the same shall be kept open forever for ornament and use as streets and squares only and for the benefit of all residents . . . contiguous to said streets and squares. . . ."

The report of the master appears fairly susceptible of the con-

struction that he finds that the right to use Essex Street as created by the indenture of 1827 attached as an easement to the land included within the purchase by the town for the playground. It appears to have been contiguous at one corner. But, however that may be, from the facts found by him it is plain that it was the intention of the parties to the indenture that the easement thereby created should be appurtenant not alone to adjacent lands but to the "several parcels owned by the parties thereto." *Graham* v. *Walker,* 78 Conn. 130. *Boland* v. *St. John's Schools,* 163 Mass. 229. It follows as matter of law that an easement to use the way laid out by the indenture of 1827 was created and used, and that that easement passed by grant as appurtenant to the playground land when purchased by the town. The easement was created by written instrument, recorded in the registry of deeds. It was defined thereby. It was declared to be for the benefit of the owner of this parcel of land among others. By its record all the world was given notice of the way and of the persons for whose benefit it was established. The way physically was made manifest on the face of the earth. It was used for travel of all kinds without question for many years before 1876. The easement was co-extensive with the way as laid out and attached to its full width of fifty feet. *Fox* v. *Union Sugar Refinery,* 109 Mass. 292. Essex Street is referred to by name as being a boundary of that portion of the playground lot devised by Sears to his daughter in 1871. The easement passed by grant to the town. *New England Structural Co.* v. *Everett Distilling Co.* 189 Mass. 145. *Burnham* v. *Mahoney,* 222 Mass. 524. *Ralph* v. *Clifford,* 224 Mass. 58, 60. *Gorton-Pew Fisheries Co.* v. *Tolman,* 210 Mass. 402. The town could acquire such easement by grant as well as by prescription or reservation. *Commonwealth* v. *Low,* 3 Pick. 408.

It is contended that the easement of the town has been extinguished. That contention is grounded in part upon the action of the superintendent of streets of the town, either of his own motion or by direction of the selectmen, in placing a barrier across the entrance to Essex Street from Ivy Street in 1876 and maintaining it for many years thereafter. At that time the playground lot was in private ownership, the town not acquiring its title by deed until 1903. The closing of the entrance was therefore the act of a public officer in the exercise of governmental functions.

It was not the conduct of a private proprietor. It was done because of an accident to a traveller in the pond. Authority was conferred by Gen. Sts. c. 43, § 83 (now R. L. c. 48, § 99), upon selectmen, whenever demanded by the public safety, to cause the entrances of private ways entering upon and uniting with public highways to be closed. If this was not done, the town was liable for damages arising from defects as if it were a public way. This act of the superintendent of streets did not affect as matter of law the private rights in the way. As matter of fact, according to the findings of the master, it did not seriously interrupt the use of the way by travellers on foot. It simply prevented vehicles from going upon it. But it did not extinguish private easements. Its design merely was to protect the municipality from liability to actions for damages. The easements in Essex Street were valuable property rights. They could not be destroyed or expropriated by public authority without compensation. The statute under which alone the town officers had a right to erect the barrier makes no provision for the payment of damages. The initial erection of the barrier grew out of the desire and right to protect the town in its governmental capacity from actions for damages for injuries received by travellers on the dangerous private way. The continued maintenance by its appropriate public officer after the purchase by the town of the playground lot was presumably for the same purpose. The easement acquired by the town by grant has not been affected. It was at most merely suspended as to the entrance of vehicles from or into Ivy Street while the barrier was maintained. The case at bar is distinguishable from *Central Wharf* v. *India Wharf*, 123 Mass. 567, and like cases where by exercise of the power of eminent domain the enjoyment of an easement has become impossible. The barrier might have been taken down at any time. The danger to the public might have been removed by the owners of the easement or of the fee, or perhaps otherwise, and no occasion remain for the further maintenance of the barrier.

There has been no abandonment of the easement. It was used all the while by pedestrians without substantial interruption. It was only the use by vehicles which was suspended. Mere nonuser, even if complete and continued, does not necessarily defeat an easement. *Willets* v. *Langhaar*, 212 Mass. 573. *Parsons* v.

*New York, New Haven, & Hartford Railroad,* 216 Mass. 269.
*Boston & Albany Railroad* v. *Reardon,* 226 Mass. 286, 292.

The fact is undisputed that each of the defendants has placed obstructions of a permanent character within the limits of the way. But it is contended that this was by virtue of a license by the town executed by the defendants and hence irrevocable. Doubtless a general parol license by the owner of the dominant tenement to obstruct an easement, when executed by the owner of the servient tenement upon his own land, becomes irrevocable. The easement is then to that extent modified. *Boston & Providence Railroad* v. *Doherty,* 154 Mass. 314, 317. The facts upon which this principle is invoked are that the defendant Whidden built a substantial wall nineteen feet into the limits of Essex Street, and that thereafter "the town by direction of the superintendent of streets, and a member of the board of selectmen having in charge the particular highway district in question, at the request of said Whidden, and at the cost of the town, placed curbing on said Ivy Street . . ." extending across and into Essex Street to the same extent as the wall with the usual curve in the curbing as it rounded in and on Essex Street, and that the superintendent of streets, when asked by a contractor employed by the defendant Whidden if he could lay a granolithic sidewalk over this nineteen foot projection into Essex Street, replied, "Yes." The defendant Whidden also graded his lot and planted shrubs and vines substantially over this space for a considerable distance down Essex Street. This finding by the master as matter of construction does not mean that the town in its corporate capacity with due formality voted that these things might be done. It simply means that the curbing was laid by direction of the superintendent of streets and the single selectman and the expense paid out of the town treasury. The laying of the curbing was not done by Whidden, but by two town officers at his request. That did not constitute a license by the town to interfere with the easement owned by it. Property rights of a municipality cannot be so lightly surrendered. The town was the owner of the easement by grant. That was a right in real estate. It could not be relinquished or extinguished by the unauthorized act of any town officer. *Franklin Savings Bank* v. *Framingham,* 212 Mass. 92, and cases collected at page 95. A selectman and superintendent of

streets cannot be presumed to have any authority respecting an easement · of travel owned by a town as appurtenant to land purchased for a playground. There was no vote of the town conferring authority upon any officer to extinguish or modify the easement. The case at bar bears no resemblance to *Canny* v. *Andrews*, 123 Mass. 155, where an easement in connection with the use of a chimney was held to be abandoned when the city had purchased the dominant estate with a building on it for the purpose of widening a street, and in execution of that purpose had taken down the building, thereby rendering the building on the servient tenement to which the chimney was attached unfit for occupation, and appropriated the greater part of the lot to the widening of the street and allowed the small remnant of the lot to lie idle for six years before selling it. There the laying out of the street, which, by its inevitable consequence, wrought the abandonment of the easement, was an authorized act of public authority.

The defendant Loring asserts an executed license from the circumstances before narrated as to the defendant Whidden, and from the fact that he procured the usual permits for constructing his building, and told the clerks or officials of the town that he proposed to put it "in any position he wanted to on the street" and had some general talk with the town engineer and one of the selectmen. Manifestly he is not protected by any license for reasons already stated.

The defendants severally were aware of the existence of the indenture of 1827 and were advised in a general way as to the state of their record title with reference to the easements in Essex Street when they built their obstructions. They had no right to narrow the way by encroachments. *Welch* v. *Wilcox*, 101 Mass. 162. They must be held in substance and effect to have made these expenditures without excuse and under no misapprehension. There is no estoppel which prevents the town from exercising its rights. There is no suggestion that prompt action was not taken when the matter came to the attention of the proper officers of the town. The cases at bar come within the authority of numerous decisions where a mandatory injunction has been issued ordering defendants to remove the obstructions. The principles which govern courts of equity have been amplified frequently and need not be repeated. *Curtis Manuf. Co.* v. *Spencer Wire Co.* 203 Mass.

448, and cases collected. *Kershishian* v. *Johnson,* 210 Mass. 135, 139. *Szathmary* v. *Boston & Albany Railroad,* 214 Mass. 42. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, 493.

The decree in the Loring case was right and is affirmed with costs. The decree in the Whidden case was erroneous. It is reversed. A new decree is to be entered directing him to remove the obstructions placed by him upon Essex Street and enjoining him from further obstructing it, with costs to the plaintiff.

*Ordered accordingly.*