EDWARD HAMLIN & another *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY & another.

Suffolk.   January 16, 1900. — September 5, 1900.

Present: KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Easement — Railroad Crossing — Plea in Bar — Deed — Right to maintain Gates at Crossing.*

A bill in equity to restrain the obstruction of a right of way over a railroad, and the proceedings thereon, which leave open the question whether the defendant has a right to maintain gates at the crossing, cannot be pleaded in bar of a bill in equity to restrain the maintenance of gates subsequently erected at such crossing.

A landowner who has granted a right of way of a definite width cannot narrow that width by building a permanent fence upon it.

Upon the facts of this case, which was a suit in equity to restrain the obstruction of a right of way over a railroad, the defendant had no right to maintain gates or bars at the crossing in question.

BILL IN EQUITY, filed April 11, 1898, against the New York, New Haven, and Hartford Railroad Company and the Old Colony Railroad Company, to restrain the obstruction of a right of way.    Hearing before *Hammond*, J., who reported the case for the consideration of the full court.    The facts appear in the opinion.

The case was argued at the bar in January, 1900, and afterwards was submitted on briefs to all the justices except *Holmes*, C. J.

*R. M. Morse*, (*M. Morton* with him,) for the plaintiffs.

*J. H. Benton, Jr.*, for the defendants.

BARKER, J.   In the year 1845 the plaintiffs' predecessor in title, owning the tract of land through which a railroad was about to be built, conveyed to the company which was to build the railroad the strip of his land subsequently described in the location of April 16, 1846.   The grantor owned other lands on each side of the strip, and his deed stipulated that the company should make a suitable road crossing.   More than one crossing was used during the first nine or ten years.   In 1854, by two deeds, parts of one transaction, the landowner released to the company all the rights to pass over the railroad, and the company in turn conveyed to the landowner, his heirs and assigns, the right of way now in question.   The railroad was built with a single track in 1845, and a second track was added in 1848.   From 1854 the crossing then granted and established remained in use, and was not obstructed by the owners of the railroad until after January 25, 1875, although a new location of the railroad was filed in 1859.   On January 25, 1895, the crossing having been obstructed by the defendants, the plaintiffs filed a bill to restrain them from further interference with the plaintiffs' use of the way.   This is the case reported in *Hamlin* v. *New York, New Haven, & Hartford Railroad*, 166 Mass. 462, in which a final decree in favor of the plaintiffs was entered on October 6, 1896.   The defendants then established on the lines between their lands and that of the plaintiffs, fences across each end of the way, with gates fourteen feet wide in each fence. Thereupon the plaintiffs brought a petition for contempt, resulting in a decree from which the defendants appealed.   Pending this appeal they substituted for the fourteen foot gates other gates

thirty-eight and one half feet in length. Each of these gates was divided into two parts, running upon rails in the upper part of the structure. When these gates are open the way is unobstructed for a space of thirty-eight and one half feet at each end, and is obstructed at each end for ten feet on each side of the gateway, the obstructions in such case being the fences and the opened gates which then stand next the fences. Upon constructing these gates the defendants locked them and sent the key to the plaintiffs, who returned the key and brought a second petition for contempt. A hearing upon this petition resulted in a report and reservation for the full court of the questions whether the defendants had the right to erect gates at the crossing, and whether they might be permitted to do so if they employed proper persons to tend them, it being agreed that the defendants' appeal from the decree upon the first petition for contempt might be taken up and heard at the same time with the questions so reserved.

By the decision reported in *Hamlin* v. *New York, New Haven, & Hartford Railroad*, 170 Mass. 548, this court ordered the report to be discharged, upon the ground that the decree in the original cause expressly left open the right of the defendants to maintain gates, and that if the plaintiffs desired to contest their right to do so it should be done in proceedings where that right would be directly in issue. The rescript to this effect was sent down on March 30, 1898, and the present bill was filed on April 11, 1898. It alleges the right of way, setting out by copy the conveyance of it by the deed of October 16, 1854, and alleging that the New York, New Haven, and Hartford Railroad Company has obstructed the way by the erection of large, heavy gates across it, and for the entire width thereof, on both sides of the tracks. To this bill each defendant filed a plea, as well as an answer. A ruling was made that the pleas were not sustained; and a bill of the defendants' exceptions to the ruling was filed and allowed, and is now before this court. In June, 1899, the case was heard upon the merits, and by consent of the parties was reported without decision to this court, such decree to be entered as the facts may require.

1. The rulings excepted to were right. The pleas set up the original bill and the proceedings thereon as a bar to the

present bill.  But the question whether the defendants have a right to maintain gates at the crossing was left open by the proceedings pleaded in bar.  The final decree in favor of the plaintiffs in those proceedings, which decree was ordered affirmed by this court, was " without prejudice to the rights of the defendants, if any they have, to maintain proper gates or bars across said way ; " and the decree entered after the decision of this court, under its rescript, was " without prejudice to any right of the defendants, to maintain proper gates or bars across said way."  The defendants' exceptions are therefore overruled.

2. It is also plain that the way granted by the deed of October 16, 1854, is in a large part cut off and made impossible of use by the plaintiffs by the present gates and fences across the ends of the way, even when the gates are opened as widely as possible.  The way granted was not merely thirty-eight and one half feet in width.  The deed gives, in addition to a way of that width, to the grantee, his heirs and assigns, the right to " pass on to his and their own land at any angle whatever with said railroad bed that he and they may see fit, whether within said thirty-eight and one half feet or not, but not more than ten feet outside of said thirty-eight and one half feet."  As the crossing is now arranged, the fences put up at each end of it by the defendants, and the gates when opened by sliding the two parts of each gate to the right and left upon the division lines, completely obstruct twenty feet of each end of the way as deeded, over which the plaintiffs have the right to have foot passengers, animals, and vehicles pass on to the plaintiffs' land after having crossed the roadbed of the railroad in a straight line.  The allegation of the bill that the defendants have obstructed the plaintiffs' way by the erection of the present gates is therefore maintained.  There are on both sides of the tracks obstructions to the use of the way which are contrary to the expressly granted rights of the plaintiffs, and for which they are entitled to relief under the present bill.  The landowner having granted the way of a definite width, he cannot narrow that width by building a permanent fence upon it.  *Salisbury* v. *Andrews,* 19 Pick. 250, 258.  *Welch* v. *Wilcox,* 101 Mass. 162.  *Tucker* v. *Howard,* 122 Mass. 529, 533.  *Dickinson* v. *Whiting,* 141 Mass. 414.

3. The remaining question is whether the defendants have the

right to maintain gates or bars at the crossing. The deed contains no reservation of any such right. But the defendants contend that it is an incident to their ownership of the land which is subject to the plaintiffs' easement.

The rule is well enough stated in Jones on Easements, § 407, cited by the defendants in their brief as follows: "The rule is general that the landowner may put gates and bars across a way over his land which another is entitled to enjoy, unless of course there is something in the instrument creating the way, or in the circumstances under which it is acquired or used, which shows that the way is to be an open one." See *O'Linda* v. *Lothrop*, 21 Pick. 292; *Atkins* v. *Bordman*, 2 Met. 457; *Underwood* v. *Carney*, 1 Cush. 285; *Johnson* v. *Kinnicut*, 2 Cush. 153; *Short* v. *Devine*, 146 Mass. 119.

Considering the language of the deed of October 16, 1854, and the circumstances under which the way was acquired by the force of that deed, and those under which the way has been used, we are of the opinion that it is an open way across which the defendants have no right to maintain any gates, bars, or other fences.

The deed was made by the railroad company some ten years after the railroad began to be used, and six years after its use had become so great as to require the laying of a second track. The provision that the way is to be used by the grantee, his heirs and assigns, "in common with all other persons, if any, who have the right to use the same," justifies the inference that it was not merely a way for the use of the grantee's farm. The width of thirty-eight and one half feet where the way crosses the bed of the railroad, and of fifty-eight and one half feet at each end, looks in the same direction, and favors the construction that such a way, as wide as many highways, was intended to be something more than a mere farm crossing. Gates or bars fifty-eight and one half feet in length could not have been so arranged as to allow one who had crossed the bed of the railroad to pass on to the adjoining land at any and all points of the fifty-eight and one half feet, without an expense so great and disproportionate in establishing and maintaining and operating such gates, and without such practical difficulty in using them, that it is absurd to suppose that such an arrangement was intended by either party to the deed. The grantor's land was used only for a rail-

road, and the only reason for gates, bars, or other fences across the ends of the way, which it is reasonable to suppose could have influenced the grantor in determining upon the kind of way to be conveyed, was the protection of its railroad bed and track, and the prevention of obstruction to its cars, engines, or trains. But the deed itself deals explicitly with that matter, and in a way different from that of having fences across the ends of the way. By the express terms of the deed the rights of way granted " are to be always so used and enjoyed as to do no unnecessary damage to said railroad bed and track, and always so as not to obstruct, impede, or delay any car or cars, engine or engines, train or trains, when in motion on said railroad tracks." The deed was the act of the railroad company, done many years after the railroad was in full operation, and stipulated for that means of preventing incidental injury to the grantor by the use of the way, upon which the grantor then preferred to rely. It bound the grantee and those succeeding to his rights to use those means effectually, by making it obligatory upon them always to so use the right as to do no unnecessary damage to the railroad bed and track, and always so as to neither obstruct, impede, or delay any car, engine, or train in motion on the tracks. Besides all this, the crossing remained open and unobstructed for many years after the time of the grant, and it is plain that its first obstruction was not in pursuance of a contention that the defendants had the right for the protection of the railroad traffic to establish proper gates and bars, but was a step in the assertion by the defendants of their contention that the right of way was extinguished by the location of 1859. In the opinion of a majority of the court these circumstances, with the deed itself, sufficiently show that what the deed intended to grant was a free right of passage over a way fifty-eight and one half feet wide at each end, and thirty-eight and one half feet wide where it crossed the roadbed of the railroad, and unobstructed by gates, bars, or other fences. See *Eames* v. *Worcester & Nashua Railroad*, 105 Mass. 193; *Williams* v. *Clark*, 140 Mass. 238.

The plaintiffs are entitled to a decree declaring their rights to be in accordance with this opinion, commanding the defendants to remove all gates or other fences now maintained across the ends of the way, and permanently enjoining them, and any and

all persons or parties claiming under them, from erecting any gates, bars, or other fences across the way, and for their damages, to be ascertained by an assessor if more than nominal damages are claimed or if their amount is not agreed upon, and for costs.

*So ordered.*