.New York Central Railroad Company & another *vs.*
Frederick Ayer & another, trustees, & another.

Suffolk. March 28, 29, 1921. — May 28, 1921.

Present: Rugg, C. J., De Courcy, Pierce, & Jenney, JJ.

*Easement. Way*, Private. *Deed*, Construction. *Equity Jurisdiction*, To enjoin infringement of easement, Laches.

In a deed of land in Boston, the parties " granted and reserved " easements in the following language: " It is mutually covenanted and agreed between the grantor and the grantees that for the convenience and benefit of the granted premises and of the remaining land of the grantor thereto adjoining, a strip of land twenty feet wide on and along the southerly and westerly sides of the granted premises shall be forever kept open for a passageway and for light and air and drainage, of which width ten feet is to be upon the granted premises and ten feet upon the adjoining land of the grantor, so that the centre line of said strip shall be coincident with the southerly and westerly boundary lines of the premises hereby conveyed, and the grantor and grantees and their respective successors, heirs and assigns, shall forever have the right to use and enjoy said strip in common for a passageway and for light and air and drainage, as appurtenant to the premises hereby conveyed and the other land of the grantor adjoining thereto." *Held*, that the entire passageway and not merely a convenient part of it was made subject to easements of passage, of light and air, and of drainage.

Evidence tending to show the use which is generally made in the city of Boston by owners in fee of land subject to an easement of the general character of the passageway above described was inadmissible at the hearing of a suit in equity by a railroad corporation to enjoin an alleged infringement of the easements

granted as above described, the grant being of an unrestricted right to use and enjoy the whole of a defined way and the language of the grant being unambiguous.

A finding of a master, to whom the suit above described was referred, that certain encroachments upon the easements by the defendant did " not interfere with the present use of the passageway by the plaintiffs," in the absence of a finding that they might not interfere with the future use of the entire easement, was immaterial.

In the suit above described, it appeared that structures which constituted infringements of the easements were built in 1900, and that from then to 1913 engineers and other officials or agents of the plaintiff frequently were on the railroad land adjoining in full sight of the defendant's building and that the encroachments easily could have been seen by them, but it did not appear that any official or agent of the plaintiff in fact observed any encroachments upon the full use of the easement or that, seeing such, any official or agent had knowledge of the rights of the plaintiff to the easement granted and reserved, nor did it appear, nor was it inferable from the evidence, that the defendant was induced to change any position taken by him in reference to the encroachments by any conduct or silence of the plaintiff. From 1913, when the infringements were discovered by the plaintiff in an investigation made for another purpose, to 1916, when the suit was brought, the parties were engaged in an attempt to adjust their differences. *Held,* that a finding that the suit was barred by laches was not warranted.

It appeared that, when the easements above described were created, there was a public sewer beneath a part of the passageway. *Held,* that the language of the grant gave the plaintiff a right to build a drain upon the surface or underground to connect with the existing sewer or sewers and otherwise did not grant a right to build a drain beneath the surface at any place within the surface boundaries of the easement; and therefore that the defendant should not be otherwise restrained in the use, beneath the surface of the passageway, of land, the title to which he owned in fee.

In the suit above described, it appeared that, because required to by the building commission of Boston under St. 1907, c. 550, § 12, the defendant placed fire escapes above the passageway which encroached upon the easements of light and air and of passage, and that their removal would cause him great pecuniary loss. *Held,* that the defendant was not thereby relieved of the obligation to remove the fire escapes.

BILL IN EQUITY, filed in the Supreme Judicial Court on March 22, 1916, and afterwards amended, by the New York Central Railroad Company and the Boston and Albany Railroad Company, as lessee and owner of land abutting upon land conveyed by the Boston and Albany Railroad Company to predecessors in title of the defendants at the corner of Exeter Street and Boylston Street in Boston, against the trustees of the Ledyard Realty Trust and the executors of the will of Frederick Ayer, owners, and the Lenox Operating Company, the lessee of that property, seeking to restrain the defendants from alleged violations of the express easement described in the opinion.

The suit was referred to a master. Findings and rulings by him are described in the opinion. The plaintiffs filed exceptions to the report as follows:

1. To the following finding in the report relative to the two fire escapes: " I find that the building commission of the city of Boston ordered the respondent Frederick Ayer to put these fire escapes in their present position where they now are, the commission knowing that they would extend across the line of the passageway. Unless two additional fire escapes had been put on or in the building, it would have been placarded and guests would have been notified that it was unsafe to live in it, which would have resulted in the closing of the hotel. Even if the building commission had allowed these new fire escapes to be put on the Exeter and Boylston street fronts of the building, they would have destroyed its appearance; also if placed on the street sides of the building they would have been nearer the present stairs inside, and the means of escape in case of fire would not have been as accessible as where they now are. If two new fire exits were provided inside the building from the top to the bottom, they would have eliminated many sleeping rooms and would have seriously lessened the renting receipts, nor did it appear that this method of construction would have been approved by the building commission." The ground for this exception was that this finding was not material to any issue raised in this suit.

2. To the following finding relative to the use made by owners in fee of land subject to passageways of the general character involved in this suit: " I find from the evidence given under this offer of proof, if material, that in passageways of a similar physical character pipes, window sills, cornices, shutters, signs, walks and fire escapes very frequently project over the side lines of the ways and coal holes and hatchways are placed in passageways; structures such as the stairs, open area and fence, hereinbefore described, do not generally exist in passageways; but it was not proved whether abutting owners owned the fee of such ways, or whether the projections were erected with or without the consent of others having rights in the ways; nor was the language in any deeds or written instruments establishing the ways given, nor did it appear how the ways were created or for how long such projections had existed." The ground for this exception was that the evidence

from which the master made this finding was incompetent, without proof that the abutting owners owned the fee of such other passageways and that the language in the deeds and written instruments establishing them was of the same legal effect as the reservation in the deed from the Boston and Albany Railroad Company to George Wigglesworth et al., dated April 18, 1899, and without proof that the projections on such other passageways were erected without the consent of others having rights therein.

3. To the following finding contained in the report: " If the attention of the owners of the building had been called at the time it was erected to the fact that the structures referred to would project, the construction could then have been changed with much less trouble and expense than at the present time." The ground for this exception was that the finding was immaterial to any issue raised in this suit in view of the further findings of the master that no direct evidence was introduced that the defendants' predecessors in title acted inadvertently or under an innocent mistake of law or fact or relied upon the silence or any statement or conduct of the complainants, their officers, agents, or employees, and that there was no direct evidence of any affirmative statement by the plaintiffs, their officers, agents, or employees, consenting to the projections nor of affirmative conduct on their part allowing such consent except the presence of the plaintiffs' engineers and other officials or agents and employees on the railroad land in sight of the building at the time it was erected.

The exceptions were heard by *Carroll*, J., by whose order an interlocutory decree was entered, sustaining the second and overruling the first and third exceptions. The single justice then, at the request of the parties, reserved and reported the case for determination by the full court upon the pleadings, the master's report, the plaintiffs' exceptions thereto, and the interlocutory decree on the exceptions.

*C. O. Pengra*, (*R. A. Stewart* with him,) for the plaintiffs.

*M. M. Johnson*, for the defendant Lenox Operating Company.

*C. K. Cobb*, for the defendants, executors and trustees under the will of Frederick Ayer, and the Ledyard Realty Trust, submitted a brief.

PIERCE, J. This is a bill in equity, alleging that the plaintiffs

are entitled to have a strip of land ten feet wide on the defendants' land, being one half of a twenty foot passageway between the premises of the parties, kept open and unobstructed from the ground up for its full width; that the defendants are maintaining structures on said strip in violation of the plaintiffs' rights; and praying for a mandatory injunction and damages.

These defendants admit the facts, but deny that the structures are in violation of the plaintiffs' rights, and plead laches.

The case was reserved upon the pleadings, the master's report, the plaintiffs' exceptions thereto, and the interlocutory decree on said exceptions.

On April 18, 1899, the predecessors in title of the plaintiffs, being then seised in fee of a large tract of land in Boston, bounded by Exeter Street, Boylston Street and Huntington Avenue and extending westerly some distance, conveyed a portion thereof situated at the corner of Boylston and Exeter streets, now known as the Hotel Lenox lot, and containing fifteen thousand six hundred square feet of land, to the defendants' predecessors in title. By said deed the parties thereto "granted and reserved " the easements in question, in the following language:

" It is mutually covenanted and agreed between the grantor and the grantees that for the convenience and benefit of the granted premises and of the remaining land of the grantor thereto adjoining, a strip of land twenty (20) feet wide on and along the southerly and westerly sides of the granted premises shall be forever kept open for a passageway and for light and air and drainage, of which width ten (10) feet is to be upon the granted premises and ten (10) feet upon the adjoining land of the grantor, so that the centre line of said strip shall be coincident with the southerly and westerly boundary lines of the premises hereby conveyed, and the grantor and grantees and their respective successors, heirs, and assigns, shall forever have the right to use and enjoy said strip in common for a passageway and for light and air and drainage, as appurtenant to the premises hereby conveyed and the other land of the grantor adjoining thereto." The grantees erected the building which is known as the Hotel Lenox. This building was accepted by the owners in December, 1900. The building covers practically the whole lot, the main walls being on the street lines on the east and north, on the side line of the pas-

sageway on the south, and within three inches of the side line of the westerly passage. The following structures and appliances described by the master were all erected at the time the building was built and accepted by the owners in 1900:

1. Cornices.
2. Plank walk.
3. Two conductor-pipes.
4. Concrete sidewalk on westerly passageway and excavation thereunder.
5. Coal hole in westerly passageway.
6. Exhaust-steam pipe.
7. Hood.
8. Hatchway.
9. Concrete sidewalk on southerly passageway and excavation thereunder.
10. Flight of steps with open area at foot, surrounded by curbing, and an open area covered by an iron grating at top of flight of stairs.
11. Two coal holes on southerly passageway.
12. Dining-room windows swinging outward.

The master finds the following structures have been erected since the filing of the bill of complaint:

1. Two fire-escapes.
2. Awnings.
3. Curbing around sidewalk in southerly passage.
4. Iron fence set in curbing around flight of steps and two upright iron-arched rods projecting it.

The master finds that no objection was made by either of the plaintiffs to the erection or maintenance of the alleged encroachments until on or about July 14, 1913, at which time the chief engineer of the New York Central Railroad Company discovered that rain conductors attached to the Hotel Lenox were discharging water on to the passageway in the rear of the building, and thence on to the adjoining property of the plaintiffs in such a way as to cause physical damage. Thereupon an investigation of the Hotel Lenox property was made by the engineering department of the railroad company, with the result that the nature and extent of the alleged encroachments above referred to and enumerated were then determined by survey and measure-

ments.  Complaint was made to the lessees of the Hotel Lenox Company of the rain conductors and of the existence of the alleged encroachments with a request that the matters be investigated. From December 15, 1913, to the date of the filing of the plaintiffs' bill, negotiations were in progress between the plaintiffs' counsel and the defendant Frederick Ayer or his counsel, concerning the removal of the alleged encroachments or for a recognition of the plaintiffs' rights in the premises as alleged in the bill.  As regards this period the master finds that there was no unreasonable delay on the part of the plaintiffs in seeking to enforce their alleged rights in the premises.  The defendant Frederick Ayer had no actual knowledge of the alleged encroachments before January 25, 1915, and the defendant Ledyard Realty Trust took the property with notice of the correspondence and negotiations between the New York Central Railroad Company and the defendant Frederick Ayer.  As regards the period before December 15, 1913, the master found the engineers and other officers or agents of the plaintiff companies and their employees were frequently on the railroad land in full sight of the defendants' building from and at the time it was erected in 1900 to 1913 and the projections which are complained of could easily have been seen by them.  These projections were constructed openly and without concealment.  Nothing happened to specially cause the attention of the persons mentioned to be brought to these projections, nor was any direct evidence introduced that they had actual knowledge of the projections, until it was discovered that the rain conductors were discharging water on to the passageway, as above stated.  " If the attention of the owners of the building had been called at the time it was erected to the fact that the structures referred to would project, the construction could then have been changed with much less trouble and expense than at the present time.  Other than this I find that the defendants have not been prejudiced by the delay in the institution of proceedings by the plaintiffs."

The defendants contend that the easements of light and air and drainage are limited by the terms of the grant and reservation to a convenient way, a convenient drainage and a convenient amount of light and air, and rely upon *Johnson* v. *Kinnicutt*, 2 Cush. 153, and *Short* v. *Devine*, 146 Mass. 119.  On the other

hand, the plaintiffs contend that the language in the deed describes the limits of the way and not merely the limits of the land over which there is to be a convenient way and that the easement holder is entitled to have the land within these limits absolutely unobstructed throughout their entire width and cite *Tudor Ice Co.* v. *Cunningham,* 8 Allen, 139, *Tucker* v. *Howard,* 122 Mass. 529, *Nash* v. *New England Mutual Life Ins. Co.* 127 Mass. 91, *Gerrish* v. *Shattuck,* 128 Mass. 571, *Hamlin* v. *New York, New Haven & Hartford Railroad,* 176 Mass. 514, and *Gray* v. *Kelley,* 194 Mass. 533. We think the words of the grant and reservation import an intent of the parties that the entire passageway and not a convenient part of it shall be subject to an easement of passage, of light and air and of drainage and we are of the further opinion that this conclusion is required by the cases cited for the plaintiffs, *supra.*

We think the exception taken by the plaintiffs to the admission of evidence to show the use which is generally made in the city of Boston by owners in fee of land subject to a way or passage of the general character of the passageways here involved, was sustained rightly by the single justice, and that the cases cited in support of the admissibility of such evidence are not applicable to a deed which in its terms is not ambiguous and which grants an unrestricted right to use and enjoy the whole of a defined way. *Hamlin* v. *New York, New Haven & Hartford Railroad,* 176 Mass. 514, 518.

Making mention of each encroachment in the order of them above enumerated, the master in each individual case finds that it " does not interfere with the present use of the passageway by the plaintiffs." He does not find that the obstructions may not interfere with the future use or convenient use of the entire easement by the plaintiffs. However the finding is immaterial, the grant and reservation were of absolute and not convenient uses or easements.

We do not think the facts warrant the defence of laches. Between 1900 and 1913, the facts found by the master show only that " engineers and other officials or agents of the plaintiff companies and their employees were frequently on the railroad land in full sight of the defendants' building . . . and the projections which are complained of could easily have been seen by them."

The master does not find that any official or agent of the plaintiffs in fact observed any encroachments upon the full use of the easement or that seeing such any official or agent had knowledge of the rights of the plaintiffs to the easement granted and reserved. In the absence of such fact, no presumption arises that the railroad corporation had knowledge of the violation of its rights in the easement and knowing such refrained from action. When the engineer in 1913 made an examination of the premises of the defendants because of the discharge of water upon the passageway from one of its encroaching water pipes, an investigation was made of other conditions. A survey was had, measurements were taken and the alleged rights of the plaintiffs ascertained by conference with the defendants and this suit was brought when other means of redress failed.

The master finds no facts to warrant a finding that the defendants were induced to change any position taken by them in reference to the encroachments by any conduct of the plaintiffs. In this regard the master finds "no direct evidence was introduced that the owners at the time the building was erected acted inadvertently or under an innocent mistake of law or fact or that they relied upon the silence or any statement or conduct of the plaintiffs, their officers, agents, or employees, nor was there any direct evidence or any affirmative statements by the plaintiffs, their officers, agents, or employees, consenting to the projections, nor of affirmative conduct on their part showing such consent," except as was inferable from the presence of officers, agents and employees on the adjoining land of the plaintiffs above referred to. *Brookline* v. *Whidden,* 229 Mass. 485. *Stewart* v. *Finkelstone,* 206 Mass. 28, 36.

The foregoing considerations relate to the right to have the passageway kept open above the ground. A somewhat different question is presented by the claim that the defendants should be enjoined from the use of the land beneath the surface which the defendants own in fee. The alleged right of the plaintiffs to restrain any use of the underground land rests upon the grant to it of a right to drainage in connection with the grant of a right to air and light and passage. As regards a similar grant it was said in *Kendall* v. *Hardy,* 208 Mass. 20, at page 28: "Drainage is the only one of these words that by any interpretation can relate

to rights underground.  Its meaning can be satisfied by referring it to drainage upon the surface." When the easement in the case at bar was created there was a public sewer beneath a part of the passageways.  In these circumstances we think the right of drainage confers upon the plaintiffs a right to build a drain upon the surface or underground to connect with the existing sewer or sewers and otherwise does not grant a right to build a drain beneath the surface at any place within the surface boundaries of the easement.

As regards the fire escapes placed upon the building in obedience to St. 1907, c. 550, § 12, we do not think the obligation imposed by the statute relieves the defendants from the obligation of their grant, even if the performance of the covenant involves great pecuniary loss.  *Taylor* v. *Finnigan,* 189 Mass. 568.  Beyond the statement as to disproportionate expense we do not find in the master's report any facts which make it inequitable to restrain the continuance of the encroachments upon the easements of light, air and passage.  There is no interference with the right of the plaintiffs in the land beneath the surface.

The plaintiffs' exceptions have been dealt with in the general discussion, and what has been said need not be repeated.  It follows that the plaintiffs are entitled to a decree with costs that within such time as may be determined by a single justice the defendants shall remove all obstructions to the full use of the easement for passage, and shall also remove all structures and encroachments which project over the passageways in a manner to interfere with the full enjoyment of the easements of light and of air.  But the plaintiffs are not entitled to a decree which shall restrict the defendants in the use of the underground land which they own in fee subject to the paramount easement of passage and of light and of air.

*Ordered accordingly.*