CAROLINE L. CARTER & others *vs.* CATHERINE SULLIVAN & others.

Suffolk.    January 6, 1932. — December 5, 1932.

Present: RUGG, C.J., CROSBY, WAIT, & FIELD, JJ.

*Way,* Private: interference, encroachment. *Equity Jurisdiction,* To enjoin infringement of easement, Laches. *Equity Pleading and Practice,* Master: exceptions to report; Appeal; Parties; Decree.

In a suit in equity by owners, severally, of parcels of land on one side of a private way five feet wide against the owner of a parcel on the opposite side, to enjoin alleged continuing trespass upon the plaintiffs' rights in the way, no question of misjoinder of parties plaintiff was made before the entry of a final decree, and, from findings by a master, it appeared that the parties plaintiff and the defendant had by grant rights in common to "the free use and privilege of" the way "for foot passage and the removal of ashes and garbage," that, subject to such rights, the plaintiffs severally owned one half of the way where their respective premises abutted and that the defendant owned the half upon which his premises abutted. Upon further findings by the master, it was *held,* that it was proper to enter a final decree,

(1) Adjudging that the defendant had acquired no rights in the "fee and soil" of the passageway "by prescription or adverse use";

(2) Ordering the defendant to remove from the way so much of a fire escape on a building on his land as extended beyond the middle of the way over the plaintiffs' half thereof, although the fire escape when not in use was at least nine feet above the way and extended only one and nine tenths feet beyond the middle of the way and the master found that it did "not in any way interfere with the use of the passageway for foot travel or for the removal of ashes or garbage": such decree was based, not upon interference by the defendant with the plaintiffs' rights of passage, but upon an encroachment on the portion of the passageway owned by the plaintiffs, and the encroachment was not so slight as to be negligible;

(3) Ordering the removal of a fence erected across the entire way, although a gateway twenty-seven inches wide was left therein: one half of the fence was an encroachment upon the half of the way owned

by one of the plaintiffs, and the entire fence, by the narrowing of the space available for use to the width of the gate, was an interference with that plaintiff's right of passage;

(4) Ordering the removal of an encroaching shed of the defendant, it having been found by the master that the defendant had acquired no prescriptive right to maintain it;

(5) Perpetually enjoining the defendant against "trespass upon the rights and property of the plaintiffs in the said passageway."

In the above suit it further was *held* that the facts, that the plaintiffs for many years had maintained, adjoining their premises and extending into the way from eight and one half to twenty and one half inches, concrete steps which, owing to the level of the plaintiffs' premises as compared with the level of the ground of the way, were "necessary in stepping from the plaintiffs' premises into the passageway and reversely," and which did not materially affect the use of the passageway for foot travel and for the removal of barrels of ashes and garbage nor materially interfere with the rights of passage which the defendant had in the whole width of said passageway, did not call for an application of the maxim that he who seeks equity must do equity, nor prevent the maintenance of the suit.

In the suit above described it appeared that the fire escapes were erected in November, 1929, by the defendant's predecessor in title who had made no attempt to obtain from any of the plaintiffs permission to build said fire escapes; that the defendant obtained title in January, 1930; that one plaintiff, who lived on his land while the fire escapes were being erected, notified a wrong person as to an objection to their erection; that another plaintiff, who lived at a distance, did not know of their erection until about a month before the suit was brought, and that there was no evidence that subsequent to such erection any change had occurred in connection with the premises of the defendant in reliance on any failure of the plaintiffs to bring suit at an earlier date or any change in the relative positions of the parties. The master found that "in so far as it is a question of fact none of the plaintiffs are guilty of laches." *Held*, that no laches appeared as a matter of law.

A defendant, joined in the suit above described because he was a mortgagee of the defendant's premises, was a proper party defendant and was not entitled to have the suit dismissed as to him although no injunctive relief was decreed against him.

BILL IN EQUITY, filed in the Superior Court on December 9, 1930, and afterwards amended, described in the opinion.

The suit was referred to a master. Material facts found by the master are stated in the opinion. By order of *Donnelly*, J., an interlocutory decree was entered confirming the master's report without mention of exceptions thereto filed by the defendant Sullivan; and by order of

*Fosdick,* J., the final decree described in the opinion was entered.

The defendants Sullivan and Weisberg appealed.

*H. Kahn & B. Beerman,* for the defendants Sullivan and another, submitted a brief.

*E. S. Macmillan,* (*M. Wilbur* with him,) for the plaintiffs.

FIELD, J. This is a bill in equity to compel the removal of certain structures from a passageway and to enjoin the defendants from "continuing to trespass upon the rights and property of the plaintiffs" therein. The plaintiffs are the owners of three parcels of land with the buildings thereon on Joy Street in the city of Boston in the rear of which is a passageway five feet wide running south from Myrtle Street. (The plaintiff Carter owns the most southerly parcel.) The defendant Sullivan is the owner, the defendant Goldberg was the previous owner, and the defendants Weisberg and the Warren Institution for Savings are mortgagees, of a parcel of land with a building thereon on the other side of the passageway. The case was referred to a master whose report was confirmed by an interlocutory decree. The evidence was not reported. Thereafter a final decree was entered dismissing the bill against the defendant Goldberg; adjudging that the plaintiffs own the fee in the passageway east of its middle line where their respective premises abut thereon, and that the defendant Sullivan and her predecessors in title have acquired no rights by prescription or adverse use in the passageway; perpetually enjoining the defendants from "trespass upon the rights and property of the plaintiffs in the said passageway," and ordering the defendant Sullivan to remove from the passageway so much of the fire escapes attached to her building as projects over the middle line thereof, and also to remove from the passageway for its entire width a fence which crosses the passageway where it abuts the premises of the plaintiff Carter and the part of a shed located in the passageway where it abuts her premises between those premises and the westerly line of the passageway projected southerly. The defendants Sullivan and Weisberg appealed from the final decree.

Since there was no appeal from the interlocutory decree

confirming the master's report and inferentially overruling the exceptions thereto (*Robinson* v. *Pero*, 272 Mass. 482, 484), and since it does not appear that the final decree was erroneously affected thereby so as to require revision under G. L. (Ter. Ed.) c. 214, § 27, the exceptions cannot be considered (*Lyons* v. *Elston*, 211 Mass. 478, 482), and the question for decision is whether the final decree is within the scope of the bill and supported by the facts found. *Hermanson* v. *Seppala*, 272 Mass. 197, 199.

First. The defendant Sullivan, herein referred to as the defendant, does not contend that the decree falls outside the scope of the bill. She contends, however, that the plaintiffs are not entitled to the decree because she has acquired a right "by prescription" to maintain the shed, the fire escapes do not extend over the land of the plaintiff Carter, and the fence and the fire escapes do not interfere with the use of the passageway by the plaintiffs, and because relief in equity is barred by the plaintiffs' encroachments upon the passageway by making concrete steps therein in the rear of their premises respectively and by their laches. The defendant contends also that if the bill can be maintained she is entitled to the affirmative relief of an order that the plaintiffs remove the steps from the passageway.

1. The decree so far as it determines the rights of the parties in the passageway is supported by the facts found. There is no contention by any party that the subsidiary findings are inconsistent with the conclusions that the plaintiffs and the defendant have by grant rights in common in the five-foot passageway for foot passage and the removal of ashes and garbage, and that, subject to these rights, the plaintiffs own the east half of the passageway where it abuts their premises respectively — unless the defendant and her predecessors in title have acquired by their use a right therein where the shed stands — and the defendant owns the west half of the passageway where it abuts her premises. The shed, which is forty-two inches wide, ten feet long and seventy-four inches high, extends across the southerly end of the passageway westerly from the premises of the plaintiff Carter. The master's finding that the defendant and

her predecessors in title acquired no rights in the "fee and soil" of the passageway "by prescription or adverse use" applies to the part of the passageway covered by the shed. It is based upon the evidence, not solely upon subsidiary findings, and must stand since it is not inconsistent with such findings and plainly wrong. *Davenport* v. *King*, 273 Mass. 31, 34. The findings, relied on by the defendant, in regard to a small shed in a somewhat different location — according to the testimony as stated in the report erected by the persons who owned the defendant's premises in 1910 — are too indefinite to require us to reach a different conclusion.

2. The plaintiffs Tapp and Goldthwaite, unless barred by their own conduct, are entitled to an order for the removal of so much of the fire escapes as projects beyond the middle of the passageway.

The fire escapes are opposite the premises of these plaintiffs. They consist of an iron balcony at each of the four upper floors of the defendant's building and ladders from balcony to balcony and from the lowest balcony to the ground. The balconies extend two and one half feet and the ladders, outside of them, one and nine tenths feet over the passageway, so that these fire escapes to the width of the ladders extend beyond the middle of the passageway and, consequently, over land owned by the plaintiffs. The ladder from the lowest balcony to the ground, when not in use, is at least nine feet above the passageway. The master found that "the fire escapes do not in any way interfere with the use of the passageway for foot travel or for the removal of ashes or garbage," but that the properties of these plaintiffs "have been injuriously affected by the erection and maintenance of such steps or ladders, that they constitute an obstruction and encroachment of a permanent or constantly recurring character so that damages would not afford adequate relief, that such obstructions interfere with the free use and enjoyment of their property and may interfere with the future use of the same and that they constitute a trespass on the property of these plaintiffs."

No subsidiary finding is inconsistent with this conclusion.

The decree on this branch of the case, therefore, is based, not upon interference by the defendant with the plaintiffs' rights of passage, but upon an encroachment on the portion of the passageway owned by the plaintiffs, and the order for the removal of the fire escapes is limited properly to the part thereof which extends over that portion of the passageway. So limited it is supported by the facts found though there is no interference with rights of passage. *Harrington* v. *McCarthy,* 169 Mass. 492, 494. *Szathmary* v. *Boston & Albany Railroad,* 214 Mass. 42, 45. *Zimmerman* v. *Finkelstein,* 230 Mass. 17. *Tyler* v. *Haverhill,* 272 Mass. 313. The encroachment upon the plaintiffs' land is not so slight as to be negligible. See *Harrington* v. *McCarthy,* 169 Mass. 492, 494–495. Nor is it justified as the result of an innocent mistake or a *bona fide* claim of right by the defendant's predecessor in title, who built the fire escapes. According to the master's finding he "apparently went ahead without regard to any possible rights of the plaintiffs in any part of the passageway." See *Szathmary* v. *Boston & Albany Railroad,* 214 Mass. 42, 44–45; *Tyler* v. *Haverhill,* 272 Mass. 313.

Since, as the master found, "No part of the fire escapes is opposite the premises of the plaintiff Carter" and her rights of passage are not interfered with by them she is not entitled to any relief with respect to the fire escapes. But no such relief was granted to her specifically and the objection to the decree on this point is merely to a misjoinder of parties plaintiff. The record does not show that this objection was taken seasonably. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, 493. *Yaskill* v. *Thibault,* 273 Mass. 266, 268. Whether if it had been taken seasonably it would have been valid in the circumstances of this case we need not inquire.

3. The plaintiff Carter, unless barred by her own conduct, is entitled to an order for the removal of the fence from the entire width of the passageway.

This fence — five feet in length and seven feet in height — extends across the passageway from this plaintiff's premises to the defendant's building and contains a gate

twenty-seven inches wide.  One half the fence is on the part of the passageway owned by this plaintiff.  An order for the removal of this half of the fence could be sustained on the principles applicable to the fire escapes.

But the master found further that "the fence and gate . . . constitute an obstruction to the rights of passage which the plaintiff Carter now has in the whole width of said passageway."  This finding is consistent with the other findings.  Nothing in the record requires the conclusion, and the defendant does not argue, that this plaintiff's rights of passage do not extend into the area back of the fence, but she contends rather that the fence, because of the gate, does not interfere with the exercise of those rights.  This plaintiff's rights under the chain of deeds through which she took title are to "the free use and privilege of said passageway" in common with others entitled to similar rights.  It is not contended that the master, who viewed the premises, was wrong in construing this language, applied to the physical facts, as limiting the plaintiff's rights in the passageway to use "for foot passage and the removal of ashes and garbage."  See *Burnham* v. *Nevins*, 144 Mass. 88, 94.  But under this language as applied to a defined passageway the plaintiff was entitled to use the passageway for such purposes throughout its entire width.  *Peavey* v. *Moran*, 256 Mass. 311, 313, 316.  See also *Tudor Ice Co.* v. *Cunningham*, 8 Allen, 139; *Gerrish* v. *Shattuck*, 128 Mass. 571, 574.  Compare *Gray* v. *Kelley*, 194 Mass. 533, 535.  Cases like *Short* v. *Devine*, 146 Mass. 119, and *Barrett* v. *Duchaine*, 254 Mass. 37, 41, are distinguishable.  The narrowing of the space available for use to the width of the gate is therefore an interference with this plaintiff's rights of passage.  *Hamlin* v. *New York, New Haven & Hartford Railroad*, 176 Mass. 514, 517.  The finding that the fence was built and rebuilt solely for the purpose of enclosing the yard in the rear of the defendant's premises is consistent with this conclusion.  The order for the removal of the whole fence is supported by the facts found.  *Boland* v. *St. John's Schools*, 163 Mass. 229, 239.  *Downey* v. *H. P. Hood & Sons*, 203 Mass. 4.

Since the plaintiff Carter is entitled to an order for the removal of the fence, it is not necessary to decide whether the other plaintiffs also are entitled to such an order. The order is no broader than is required for her protection, and the question of misjoinder of parties plaintiffs was not seasonably raised.

4. The defendant makes no contention in regard to the order for the removal of the shed except that she has acquired a right to maintain it. This contention is decided against her. It may be added, however, that the master found that "the portion of the shed now standing within the area of said passageway and between the plaintiff Carter's premises and the western line of said passageway extended to the wall at the southerly end of said passageway constitutes an obstruction to the rights of passage which the plaintiff Carter now has in said passageway." Consequently the order for its removal is justified by considerations similar to those applicable to the order for the removal of the fence.

5. The perpetual injunction against "trespass upon the rights and property of the plaintiffs in the said passageway" naturally accompanies the orders for the removal of the fire escapes, fence and shed and is supported by the facts found. See *Hamlin* v. *New York, New Haven & Hartford Railroad*, 176 Mass. 514, 519–520; *Ziendarski* v. *Baranowski*, 253 Mass. 422, 424.

6. The plaintiffs are not barred from equitable relief by the fact that each of them maintains a concrete step in the passageway.

These steps "vary in height from seven and one half to thirteen inches, in length from two feet five inches to three feet two inches and extend into the passageway from eight and one half inches to twenty and one half inches" and are "wholly within the space between the plaintiff's premises and the middle of the passageway." The master found that "they have been in existence in their present location for many years, . . . that, owing to the level of the rear of the plaintiffs' premises as compared with the level of the ground of the passageway, steps in the plain-

tiffs' yards or in the passageway are necessary in stepping from the plaintiffs' premises into the passageway and reversely," and that "the present steps do not materially affect the use of the passageway for foot travel and for the removal of barrels of ashes and garbage"— that they "do not materially interfere with the rights of passage which the defendant has in the whole width of said passageway."

The plaintiffs as the owners of the fee in one half of the passageway are entitled to make any use of that half not inconsistent with the common rights of passage therein. *Salter* v. *Boston & Albany Railroad,* 239 Mass. 235, 248. *Healey* v. *Smith Carriage Co.* 265 Mass. 203, 208–209. Though the findings show the dimensions in general of the steps, they do not show in detail the location of each step with reference to the surface of the passageway which could have been seen by the master when he took a view of the premises. It is apparent, however, that the steps created irregularities in the surface. But we cannot say that the master's conclusion, based upon the view and unreported testimony, that the steps did not materially interfere with the limited use of the passageway to which the defendant was entitled was inconsistent with his subsidiary findings and plainly wrong. Apart from any prescriptive right to maintain the steps, their long continued existence and the necessity for such steps for access from the plaintiffs' premises to the passageway in which they, as well as the defendant, had rights of passage are facts to be considered in determining the extent of the defendant's rights as matter of interpretation of the grant thereof. *Atkins* v. *Bordman,* 2 Met. 457, 467. *J. S. Lang Engineering Co.* v. *Wilkins Potter Press,* 246 Mass. 529, 532. *Barrett* v. *Duchaine,* 254 Mass. 37, 40–41. Conceivably a passageway for foot passage and the removal of ashes and garbage may not require the level surface essential in a passageway for ordinary vehicular traffic. Compare *New York Central Railroad* v. *Ayer,* 242 Mass. 69, 75. On the findings, therefore, the plaintiffs are entitled to maintain their steps.

Since the plaintiffs are entitled to maintain their steps neither the maxim that he who comes into equity must

come with clean hands, nor the maxim that he who seeks equity must do equity helps the defendant. *Loud* v. *Pendergast*, 206 Mass. 122, 124, relied on by her, is distinguishable. The maintenance of the steps serves the defendant neither as a defence nor as a ground for affirmative relief.

7. The defendant contends that the plaintiffs are barred by their laches from obtaining an order for the removal of the fire escapes. This contention is without merit.

Laches is generally a question of fact. *Alvord* v. *Bicknell*, 280 Mass. 567, 571–572, and cases cited. The master found that "in so far as it is a question of fact none of the plaintiffs are guilty of laches." The fire escapes were erected during a period of about two weeks in November, 1929, by the defendant's predecessor in title. He "made no attempt to obtain from any of the plaintiffs permission to build said fire escapes." He conveyed his premises to the defendant by deed dated January 2, 1930. This suit was brought December 9, 1930.

The conduct of the plaintiff Carter is immaterial since in no event is she entitled to relief in respect to the fire escapes. The plaintiff Goldthwaite "lives in Taunton and lets his house and visits it only at long intervals." He "first learned of the existence of the fire escapes in November, 1930, and immediately consulted counsel as a result of which this suit was brought." It does not appear that he was at fault in failing to ascertain the facts earlier. Clearly the master's conclusion that this plaintiff was not guilty of laches is not inconsistent with the subsidiary facts found. *Stewart* v. *Finkelstone*, 206 Mass. 28, 36.

The plaintiff Tapp lives on the premises owned by her. She learned of the fire escapes while they were being erected and then notified a person, whom she mistakenly supposed to be the attorney for the defendant's predecessor in title, that they were being erected unlawfully. Apparently she took no further steps in the matter other than to bring this suit. The master states, however, that, except for "the fact of the purchase of the property by the defendant subsequent to the erection of the fire escapes, no evidence was

offered to the effect that subsequent to such erection any change had occurred in connection with the premises of the defendant in reliance on any failure of the plaintiff Tapp to bring suit at an earlier date or any change in the relative positions of the parties." It cannot be said as matter of law that this plaintiff was guilty of laches in failing to act, except as stated, to prevent the erection of the fire escapes during the brief period they were under construction or to bring suit for the removal of them before the premises were conveyed to the defendant. Neither acquiescence in the encroachment nor lack of diligence in seeking a remedy therefor is necessarily to be inferred from the plaintiff's inaction during this short period. *Linzee* v. *Mixer*, 101 Mass. 512, 526–528. *Stewart* v. *Finkelstone*, 206 Mass. 28, 36. *Crosby* v. *Blomerth*, 258 Mass. 221, 225. Nor was a finding required that the delay in bringing suit after the conveyance to the defendant amounted to laches. It does not appear that such delay worked any disadvantage to her. "Laches is not mere delay but delay that works disadvantage to another." *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 69. See also *Alvord* v. *Bicknell*, 280 Mass. 567, 572.

Second. The defendant Weisberg contends that the decree as against him is not within the scope of the bill or supported by the facts found, and that the bill should be dismissed as against him. The only specific mention of this defendant in the stating part of the bill is the allegation that he is the present holder of a second mortgage, therein described, on the defendant Sullivan's premises. The truth of this allegation was admitted but no further finding was made by the master in respect to the defendant Weisberg. He was at least a proper party to the bill since a decree thereon would affect his property rights and possibly diminish the value of his security. *Everett* v. *Edwards*, 149 Mass. 588, 589. See *Stewart* v. *Finkelstone*, 206 Mass. 28, 34–35. He cannot rightly object to being made a party defendant and — especially in the absence of disclaimer by him of any interest in the subject matter of the suit — he is not entitled to have the bill dismissed as against him.

No order for affirmative action by him is made. It is proper that he be bound by the adjudication of the rights of the parties in the passageway.

*Decree affirmed with costs.*