MOSES GERAGOSIAN *vs.* UNION REALTY COMPANY & another.

Middlesex.     November 16, 1934. — January 4, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Equity Jurisdiction,* To enjoin infringement of right of way, To enjoin trespass. *Way,* Private. *Equity Pleading and Practice,* Appeal.

Where, in a suit in equity by one landowner against another, it appeared that both the plaintiff and the defendant had rights of way in a common passageway, but it did not appear that the plaintiff's rights

included having the passageway kept open to the sky, the plaintiff was not entitled to have the defendant ordered to remove portions of a fire escape on his building which overhung two or three feet of the passageway in such a manner as not to interfere with the use of the passageway by the plaintiff.

In a suit in equity by a landowner against the owner of adjoining land, it appeared that a fire escape on the defendant's building overhung a portion of the plaintiff's land eleven inches wide and three feet long, but caused no interference with the then use of that land; that the overhanging portion of the fire escape could be easily removed; that an underground drain from the defendant's building ran through an unoccupied portion of the plaintiff's land for about fifty-three feet, but did not interfere with the then use of that land; that the land and buildings of the plaintiff were of small value, and those of the defendant of great value; that the cost of a new drain which would not encroach upon the plaintiff's land would be about $4,300; and that a former owner of the defendant's land, who, when he built the building thereon, unintentionally had caused the encroachments on the plaintiff's land, knew of them and induced the plaintiff to purchase the adjoining land for the purpose of making trouble for the defendant. It did not appear that the plaintiff was under the control of such former owner of the defendant's land or shared his purpose. The suit was commenced nearly three years after the plaintiff acquired title. *Held*, that

(1) No laches on the part of the plaintiff was shown, nor anything to estop him to maintain the suit;

(2) The motives of the former owner of the defendant's land could not impair the property rights of the plaintiff;

(3) In the circumstances, the plaintiff was entitled to have the defendant ordered to remove the portion of the fire escape overhanging the plaintiff's land, and to have the defendant enjoined from further use of the drain across the plaintiff's land.

There is no right of appeal from an order for final decree in a suit in equity.

BILL IN EQUITY, filed in the Superior Court on October 26, 1932.

The suit was referred to a master. The bill and material facts found by the master are described in the opinion. By order of *Walsh*, J., there were entered an interlocutory decree confirming the master's report and the final decree described in the opinion. The defendant Union Realty Company appealed from the order for and from the final decree.

*B. Ginsburg*, for the defendant Union Realty Company.

*W. B. Sullivan, Jr.*, for the plaintiff.

LUMMUS, J.  In 1927 one Vartigian built a theatre in

Somerville on land the rear of which adjoined the rear of land of one Aaronian. Both lots bounded also in the rear upon a private way called Sewall Court, which ran into Sewall Street. There is no finding as to the ownership of the fee in Sewall Court, but it is found that rights of way over Sewall Court are appurtenant to both the Vartigian land and the Aaronian land. The plaintiff, now owning the Aaronian land, seeks an injunction against the present owners of the theatre, for the removal of trespassing structures.

The platforms of the fire escape on the theatre at all three levels, and the stairway between the first and second levels, overhang the end of Sewall Court to a maximum extent of two to three feet. This overhang is all at a considerable height above the ground, and is close to the wall of the theatre, at a point where the use of the way could be of no benefit to the Aaronian land. The record does not show that the owner of the Aaronian land has a right to have Sewall Court kept open to the sky. The final decree was erroneous in ordering the removal of the fire escapes so far as they extend over Sewall Court. *Sargeant* v. *Traverse Building Trust,* 267 Mass. 490, 494. *Carter* v. *Sullivan,* 281 Mass. 217. Compare *Levenson* v. *Ciampa,* 251 Mass. 379. See also, as to structures which do not interfere with a right of way because underground, *Kendall* v. *Hardy,* 208 Mass. 20, 28, 29, and *New York Central Railroad* v. *Ayer,* 239 Mass. 70, 78, 79.

The theatre encroaches upon the Aaronian land itself in two respects. First, the platform of the fire escape on the theatre, at the third level, far above the ground, overhangs a piece of the Aaronian land eleven inches wide and three feet long, but causes no interference with the present use of that land. Second, a drain from the theatre runs, at a depth of eight or nine feet below the surface, about fifty-three feet through the unoccupied rear part of the Aaronian land, and a further distance through the soil of Sewall Court, to a manhole, where it empties into a sewer which runs from that manhole in Sewall Court through Sewall Street. This drain does not interfere with the use of the

right of way over Sewall Court, and does not interfere with the present use of the Aaronian land, upon the front of which a block of thirteen one-story garages is maintained for hire.

The defendant Union Realty Company took from Vartigian two mortgages covering the theatre, and assigned the first one to the defendant Charlestown Five Cents Savings Bank in 1927. In 1928 Vartigian conveyed his equity of redemption to Sidney Realty Co., in which Union Realty Company held three fourths of the stock and Vartigian's wife held the rest. A dispute arose as early as 1929 between Union Realty Company and Vartigian over a candy stand which Vartigian or his wife maintained in the theatre. On January 28, 1930, Union Realty Company, controlling Sidney Realty Co., prevented the further maintenance of the stand.

On January 30, 1930, Vartigian induced his wife's step-brother, the plaintiff Geragosian, to buy the Aaronian land for $6,500. Title passed to him on February 4, 1930. Vartigian then knew of the encroachments, and his purpose in inducing the plaintiff to buy the land was to control it and to make trouble for Union Realty Company. But when the theatre was built, the encroachments were unintentional on the part of Vartigian. The master does not find that Geragosian shared in the purpose of Vartigian, or is under the control of Vartigian. On June 12, 1931, Union Realty Company foreclosed its second mortgage on the theatre, and bought in the theatre at the foreclosure sale. The land and buildings of the plaintiff Geragosian are worth about $2,800. The theatre, with its land, is worth about $250,000. The cost of a new drain which would not trespass on the plaintiff's land would be $4,300. The small part of the fire escape platform that overhangs the plaintiff's land, it is found, "could be removed without much difficulty and without materially interfering with the defendant's use of its fire escapes."

This bill was filed on October 26, 1932, although the controversy had existed since early in 1932, and the fact of encroachment had been called to the attention of Union Realty Company in 1930 or 1931.

The right of property which the plaintiff seeks to protect is legal, not merely equitable. *Curtis Manuf. Co.* v. *Spencer Wire Co.* 203 Mass. 448, 452. *Szathmary* v. *Boston & Albany Railroad,* 214 Mass. 42, 45. It is not a mere easement, as in *Starkie* v. *Richmond,* 155 Mass. 188, *Levi* v. *Worcester Consolidated Street Railway,* 193 Mass. 116, and *Kendall* v. *Hardy,* 208 Mass. 20, although an injunction has often been granted for the protection of an easement. *Brookline* v. *Whidden,* 229 Mass. 485. *Siegel* v. *Starzyk,* 238 Mass. 291. *New York Central Railroad* v. *Ayer,* 239 Mass. 70, S. C. 242 Mass. 69. *Peavey* v. *Moran,* 256 Mass. 311. *Carter* v. *Sullivan,* 281 Mass. 217. Neither is the plaintiff's right a mere leasehold, soon to expire. *Brande* v. *Grace,* 154 Mass. 210. *Lynch* v. *Union Institution for Savings,* 158 Mass. 394, S. C. 159 Mass. 306. It is the fee.

The protection by injunction of property rights against continuing trespasses by encroaching structures has sometimes been based upon the danger that a continuance of the wrong may ripen into title by adverse possession or a right by prescription. *Harrington* v. *McCarthy,* 169 Mass. 492, 494. *Cobb* v. *Massachusetts Chemical Co.* 179 Mass. 423, 426. *Marcus* v. *Brody,* 254 Mass. 152, 155. *Tyler* v. *Haverhill,* 272 Mass. 313, 315. Other cases point out that, since trespassing structures constitute a nuisance (*Codman* v. *Evans,* 7 Allen, 431; *Miles* v. *Worcester,* 154 Mass. 511; *Milton* v. *Puffer,* 207 Mass. 416), and a plaintiff obtaining a second judgment for nuisance has a right to have the nuisance abated by warrant of the court (G. L. [Ter. Ed.] c. 243, § 3), the denial of an injunction would only drive the plaintiff to a more dilatory remedy to obtain removal or abatement. *Curtis Manuf. Co.* v. *Spencer Wire Co.* 203 Mass. 448, 452. *Szathmary* v. *Boston & Albany Railroad,* 214 Mass. 42, 45. But the basic reason lies deeper. It is the same reason "which lies at the foundation of the jurisdiction for decreeing specific performance of contracts for the sale of real estate. A particular piece of real estate cannot be replaced by any sum of money, however large, and one who wants a particular estate for a specific use, if

deprived of his rights, cannot be said to receive an exact equivalent or complete indemnity by the payment of a sum of money. A title to real estate, therefore, will be protected in a court of equity by a decree which will preserve to the owner the property itself, instead of a sum of money which represents its value." Knowlton, J., in *Lynch* v. *Union Institution for Savings*, 159 Mass. 306, 308. Leaving an aggrieved landowner to remove a trespassing structure at his own expense and risk, would amount in practice to a denial of all remedy, except damages, in most cases. If the landowner should attempt to right his own wrongs, a breach of the peace would be likely to result.

The facts that the aggrieved owner suffers little or no damage from the trespass (*Harrington* v. *McCarthy*, 169 Mass. 492, 494; *Szathmary* v. *Boston & Albany Railroad*, 214 Mass. 42, 45; *Congregation Beth Israel* v. *Heller*, 231 Mass. 527, 529; *Crosby* v. *Blomerth*, 258 Mass. 221, 226), that the wrongdoer acted in good faith and would be put to disproportionate expense by removal of the trespassing structures (*Kershishian* v. *Johnson*, 210 Mass. 135, 139; *Marcus* v. *Brody*, 254 Mass. 152, 155; *Tyler* v. *Haverhill*, 272 Mass. 313, 316), and that neighborly conduct as well as business judgment would require acceptance of compensation in money for the land appropriated (*Hodgkins* v. *Farrington*, 150 Mass. 19, 24), are ordinarily no reasons for denying an injunction. Rights in real property cannot ordinarily be taken from the owner at a valuation, except under the power of eminent domain. Only when there is some estoppel or laches on the part of the plaintiff (*Nelson* v. *American Telephone & Telegraph Co.* 270 Mass. 471, 480, 481; *Malinoski* v. *D. S. McGrath, Inc.* 283 Mass. 1, 11), or a refusal on his part to consent to acts necessary to the removal or abatement which he demands (*Tramonte* v. *Colarusso*, 256 Mass. 299), will an injunction ordinarily be refused. It is true that in *Methodist Episcopal Society in Charlton City* v. *Akers*, 167 Mass. 560, the court refused an injunction for the removal of a building from a small piece of rough rural land; that in *Harrington* v. *McCarthy*, 169

Mass. 492 (compare *Tramonte* v. *Colarusso,* 256 Mass. 299; *Crosby* v. *Blomerth,* 258 Mass. 221), a slight encroachment of a foundation under ground was held not to require an injunction; that in *Loughlin* v. *Wright Machine Co.* 273 Mass. 310, the court refused an injunction against the maintenance of a sewer across a useless six-inch strip owned by the plaintiff; and that in *Malinoski* v. *D. S. McGrath, Inc.* 283 Mass. 1, 11, and cases cited, the right of the court to refuse an injunction because of hardship was stated. But such cases are exceptional. The general rule is that the owner of land is entitled to an injunction for the removal of trespassing structures. *Harrington* v. *McCarthy,* 169 Mass. 492. *Kershishian* v. *Johnson,* 210 Mass. 135. *Brown* v. *Peabody,* 228 Mass. 52, 56. *Nelson* v. *American Telephone & Telegraph Co.* 270 Mass. 471, 481. *Tyler* v. *Haverhill,* 272 Mass. 313, 315, and cases cited. *Carter* v. *Sullivan,* 281 Mass. 217.

Nothing takes this case out of the general rule. No estoppel or laches is shown. The motives of Vartigian cannot impair the property rights of Aaronian or his grantee Geragosian. The final decree rightly restrained the further use of the drain across the plaintiff's land, and ordered the removal of the fire escape platform so far as it overhangs said land. The appeal claimed from the order for a decree need not be considered, for no such appeal lies. *Graustein* v. *Dolan,* 282 Mass. 579, 582, 583. The final decree is modified by striking out the provision for an injunction requiring removal of the fire escape overhanging Sewall Court, and as modified is affirmed with costs.

*Ordered accordingly.*